UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Robert Springer, et al.,

　　　　　Plaintiffs,

　　　　　–v–

Code Rebel Corporation, et al.,

　　　　　Defendants.

16-cv-3492 (AJN)

MEMORANDUM & ORDER

---

ALISON J. NATHAN, District Judge:

　　Before the Court are two sets of motions. First, Plaintiffs William Tran and Adrian Ybarra seek appointment as Lead Plaintiffs in this purported securities class action, and to have their chosen counsel, The Rosen Law Firm, P.A., and Pomerantz, LLP, approved as co-lead counsel for the purported class. *See* Dkt. No. 23. Second, the individual defendants in this case, Arben Kryeziu a/k/a Arben Kane ("Kane") and Reid Dabney ("Individual Defendants"), move for an order extending the automatic bankruptcy stay to the claims asserted against the Individual Defendants. *See* Dkt. No. 35. For the reasons that follow, Plaintiffs' Tran and Ybarra's motions are granted, and the Court defers to the United States Bankruptcy Court for the District of Delaware to decide, in the first instance, the appropriateness of staying this action as against the Individual Defendants.

1

I.  **Appointment of Lead Plaintiff and Lead Counsel**

As noted, on July 11, 2016, Plaintiffs William Tran and Adrian Ybarra moved for the Court to appoint them as lead plaintiffs in this securities class action. Dkt. No. 23. Tran and Ybarra also moved for approval of their chosen counsel, The Rosen Law Firm, P.A., and Pomerantz LLP, as co-lead counsel for the purported class. *Id.* Three competing motions were originally filed on the same day by George Torres, Dkt. No. 24, Afaq Shaik, Dkt. No. 28, and Larry Strowbridge, Dkt. No. 31, but all three have since been withdrawn, and Torres, Shaik, and Strowbridge have all indicated that they do not oppose appointment of Tran and Ybarra as lead plaintiffs. *See* Dkt. No. 41; Dkt. No. 44; Dkt. No. 46. No other opposition been filed. For the reasons articulated below, the Court appoints Tran and Ybarra Lead Plaintiffs and approves their chosen law firms as co-counsel for the class.

**A. Appointment of Lead Plaintiffs**

Though Tran and Ybarra's motion is now unopposed, the Court nevertheless addresses the requirements under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for appointment of lead plaintiffs, as other courts have done so even in the context of unopposed motions. *See, e.g., In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923 (DRH)(JO), 2006 WL 1120619, at *2 (E.D.N.Y. Apr. 26, 2006) (engaging in a similar inquiry to address the merits of an unopposed motion for appointment of lead plaintiff and class counsel); *accord Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1070 (C.D. Cal. 1999) ("When determining which class member to appoint lead plaintiff, a court should consider the rebuttable presumption factors enumerated in the Act, even when the motion is unopposed.").

2

Under the PSLRA, "the Court is required to appoint the 'most adequate plaintiff' as lead plaintiff." *Maliarov v. Eros Intern. PLC*, Nos. 15-cv-8956 (AJN), 16-cv-223 (AJN), 2016 WL 1367246, at *2 (Apr. 5, 2016) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)). The statute establishes a rebuttable presumption that the "most adequate plaintiff" is a plaintiff who, first, "has either filed the complaint or made a motion in response to a notice," second, "has the largest financial interest in the relief sought by the class," and third, "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). "This presumption may only be rebutted by proof that the purportedly most adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Maliarov*, 2016 WL 1367246, at *2 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa), (bb)).

As an initial matter, Tran and Ybarra satisfied the first requirement, making a motion in response to a notice, when they moved for appointment as lead plaintiffs. *See In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16-cv-03495 (AT) (BCM), 2016 WL 5867497, at *4 (S.D.N.Y. Oct. 4, 2016).

Second, Tran and Ybarra have the "largest financial interest in the relief sought by the class" of any plaintiff who moved for appointment of class counsel. § 78u-4(a)(3)(B)(iii)(I)(bb). Courts in this district, in determining which plaintiff has the greatest such interest, look to the following factors:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period ... ; (3) the net funds expended during the class period...; and (4) the approximate losses suffered.

3

*Maliarov*, 2016 WL 1367246, at *2 (quoting *Peters v. Jinkosolar Holding Co., Ltd.*, No. 11-CV-7133 (JPO), 2012 WL 946875, at *5 (S.D.N.Y. Mar. 19, 2012)). The last factor, financial loss, is the most important of the four. *Peters*, 2012 WL 946875, at *5.

Tran and Ybarra represent that they purchased a total of 39,004 shares during the class period; that they purchased 27,032 net shares (subtracting the total sold from the total purchased); that they expended $98,586.28 in net funds; and that they lost $97,775.32. *See* Dkt. No. 25, Ex. 3. The other plaintiffs, in withdrawing their respective motions, acknowledged that their financial interest was not as great. *See* Dkt. No. 27, Ex. 3 (noting that Torres purchased 22,786 total shares and 14,486 net shares, expended $55,251.60 in net funds, and lost $53,740.71); Dkt. No. 30, Ex. 3 (noting that Shaik purchased 9,000 total shares and 6,500 net shares, expended $22,255.00 in net funds, and lost $21,657.06); Dkt. No. 33, Ex. 2 (noting that Strowbridge purchased 69,735 total shares and 26,425 net shares; expended $73,990.00 in net funds; and lost $69,836.25). No additional plaintiff has come forward suggesting she has a greater financial interest in this litigation.

Third, Tran and Ybarra have made a sufficient preliminary showing that they can satisfy the relevant requirements of Federal Rule of Civil Procedure 23. Rule 23(a) permits a party to sue on behalf of a class subject to meeting four requirements:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

"For the purposes of appointment as lead plaintiff pursuant to the PSLRA . . . , 'the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.'" *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2016 WL 5867497, at *4 (quoting *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010)).

Tran and Ybarra have made preliminary showings as to both requirements. "The typicality requirement 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Maliarov*, 2016 WL 1367246, at *6 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). In this case Tran and Ybarra, like all members of the class, allege that the Defendants made false and misleading statements about Code Rebel's financial condition. *See* Dkt. No. 25, at 5. Tran and Ybarra's claims, then, appear typical of the purported class as a whole. *See* Dkt. No. 1 ¶19.

To satisfy the adequacy requirement at this stage of the proceedings, Tran and Ybarra must make a preliminary showing that "(1) [their choice of] class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff[s] and the members of the class; and (3) [they have] a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011). Here, Tran and Ybarra provided documents demonstrating the extensive experience of their two chosen law firms, The Rosen Law Firm, P.A., and Pomerantz LLP, in complex securities class action suits, *see* Dkt. No. 25, Ex. 4, Ex. 5, and indeed, no other plaintiff suggests otherwise. Nor does any plaintiff suggest that either Tran or Ybarra would have a particular conflict between his own interests and those of the class, generally, or that either plaintiff's financial interest in the litigation would be insufficient to ensure vigorous advocacy.

Finally, given the lack of opposition to Tran and Ybarra's motion, the Court has been presented with no proof that they "will not fairly and adequately protect the interests of the class" or are "subject to unique defenses that render such plaintiff[s] incapable of adequately

representing the class." § 78u-4(a)(3)(B)(iii)(II)(aa), (bb)). Thus, the Court GRANTS Tran and Ybarra's motion to be appointed lead plaintiffs.

### B. Approval of lead counsel

The PSLRA also provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel." *Maliarov*, 2016 WL 1367246, at *7 (quoting *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015)). It is evident from the documentation provided to the Court that both law firms the lead Plaintiffs seek appointed as co-counsel have had "extensive involvement in complex securities class action litigation," *id.* See Dkt. No. 25, Ex. 4, Ex. 5, The Court thus approves The Rosen Law Firm, P.A., and Pomerantz LLC, as co-lead counsel.

## II. The Motion for a Stay

The Court next addresses the motion of the Individual Defendants seeking an order extending the automatic stay of claims asserted against Code Rebel Corporation (the "Debtor") to claims asserted against the Individual Defendants. For the reasons that follow, the Court declines to address the scope of the automatic stay in the first instance, and, under its equitable powers, temporarily stays this action for 60 days to permit the Individual Defendants to seek their requested relief from the United States Bankruptcy Court for the District of Delaware.

### A. Procedural History

On May 10, 2016, the Plaintiffs in this case filed a Complaint against Defendants Code Rebel Corp., Kane, and Dabney, alleging securities fraud under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a). *See* Dkt. No. 1. Shortly thereafter, on May 18, 2016, Code Rebel Corporation filed a voluntary petition seeking bankruptcy protection under Chapter 7 of 11 U.S.C. § 101, et seq, in the United States Bankruptcy Court for the District of Delaware. *See* Dkt. No. 10; *see also In re Code Rebel Corp.*, No. 16-11236 (Bankr. D. Del. May 18, 2016), ECF No. 1. The effect of the bankruptcy was to automatically stay litigation against Code Rebel itself. *See* 11 U.S.C. § 362(a). The question of whether the bankruptcy stay applies to the Individual Defendants, however, is more complicated. *See Queenie Ltd. v. Nygard Intern.*, 321 F.3d 282, 287 (2d Cir. 2003) ("The automatic [bankruptcy] stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate.").

On June 20, 2016, this Court ordered the parties to submit a joint letter indicating whether the case should proceed against the Individual Defendants, Kane and Dabney, or whether it should be stayed in light of the bankruptcy proceedings. Dkt. No. 11. The parties submitted that letter on June 29, 2016, taking divergent positions. Dkt. No. 13. This Court thereafter ordered supplemental briefing on three questions:

1. Whether arguments about the effect of litigation on Code Rebel Corporation's bankruptcy should be directed to this Court or to the bankruptcy court in the first instance,
2. On what, if any, basis could Plaintiff apply the doctrine of collateral estoppel to preclude Code Rebel from challenging a ruling of this Court with respect to the Individual Defendants?
3. If the Court were to stay this action with respect to the Individual Defendants, how long should the stay remain in place?

Dkt. No. 14.

On July 8, 2016, the Individual Defendants' formally moved for a stay and submitted a supplemental brief in support of their motion. *See* Dkt. No. 35; *see also* Dkt. No. 37 (hereafter, "Mot. to Stay"). In that memorandum, they first argue that this Court has jurisdiction to determine whether this Action should be stayed, a proposition which is not in dispute. *See* Mot. to Stay at 1 (citing *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 347 (2d Cir. 1985) ("The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay."). The Individual Defendants further acknowledge that this Court has the discretion to defer to the Bankruptcy Court to decide, in the first instance, the scope of the automatic stay, a proposition that is also not in dispute. *See* Mot. to Stay at 2; *Baldwin*, 765 F.2d at 347 ("Whether [the district court] ought to exercise its authority [to determine whether the Action before it is stayed], however, is a different question."). The Individual Defendants nevertheless argue that this Court, rather than the Bankruptcy Court, should determine the scope of the stay in the first instance for one reason: given that the parties have already submitted briefing as to the issue before this Court, it would be wasteful to ask them to resubmit that briefing before the Bankruptcy Court. *See* Mot. to Stay at 2. On the merits, the Individual Defendants argue that the stay is warranted, first, because they have a right of indemnification from Code Rebel (rendering an award of damages against them effectively an award of damages against the debtor), *id.* at 3, and second, that principles of collateral estoppel would bind Code Rebel to any adverse determinations made against the Individual Defendants in this Action, *id.* at 4.

On July 15, 2016, the Plaintiffs' filed their opposition. Dkt. No. 38 (hereafter, "Opp."). In that opposition, they argue, first, that the Bankruptcy Court, rather than this Court, should rule on

the scope of the stay in the first instance. *See* Opp. at 3. Turning to the merits, they argue that neither the possibility of indemnification nor of collateral estoppel, in this case, justifies a stay against the Individual Defendants. *See id.* at 3-10.

On July 20, 2016, the Trustee for the estate of Code Rebel, Jeoffrey L. Burtch, filed a letter with this Court supporting the Individual Defendants' motion for a stay. Dkt. No. 40 ("Letter"). In that letter, the Trustee makes reference to a Directors' and Officers' Liability Insurance Policy (the "D&O Policy") owned by the Debtor. *See Id.* at 2. The Trustee represents that the policy is a "wasting policy," and as such that it "will be eroded by legal fees consumed in defending this action and any other similar actions." *Id.* He thus asks for a temporary stay so as to explore the possibility of a settlement with the insurance carrier before the limit of the policy is fully eroded. *See id.*

### B. Discussion

The Court concludes that, on the specific facts of this case, the Court should defer to the Bankruptcy Court to determine the scope of the automatic stay in the first instance.

The Court reaches this determination for several reasons. First, as the Trustee has observed in motions filed in the Bankruptcy Court, there are now multiple actions pending against the Individual Defendants in separate jurisdictions. *See In re: Code Rebel Corp.*, Case No. 16-11236 (BLS) ¶ 7 (Bankr. D. Del.), Dkt. No. 20 (Jul. 27, 2016). In addition to the action pending in this Court, at least two purported class actions have been filed in the Superior Court of the State of California against, *inter alia*, Kane and Dabney. The existence of multiple actions in distinct jurisdictions (with a potential bevy of plaintiffs) weighs in favor of centralizing a determination as to the scope of the automatic stay in the bankruptcy court. *See Baldwin*, 765 F.2d at 349 ("If the applicability of the stay to contribution and indemnity claims filed in response to post-

petition first-party complaints but arising out of pre-petition conduct is determined in various district courts throughout the country, the ability of the Bankruptcy Court to assure equality of treatment among creditors will be seriously threatened.").

Second, there are no special considerations in this case indicating that this Court, rather than the Bankruptcy Court, should make the first determination as to the scope of the stay. This Court does not have "substantial experience and familiarity" with the case, a factor courts have relied on in deciding to determine, in the first instance, the scope of automatic stays. *See, e.g., Patterson v. Newspaper & Mail Deliverers' Union of N.Y. & Vicinity*, 138 B.R. 149, 152 (S.D.N.Y. 1992) (declining to defer to the Bankruptcy Court to determine whether to stay enforcement of an aspect of a consent decree, entered into almost twenty year prior to the bankruptcy, because the district court had "substantial experience and familiarity with the" decree, its enforcement, and the facts of the case). Indeed, the motions resolved in this Order are the first, and only, motions the parties have filed in this case. Nor is the question of the scope of a stay in this case the sort that, in *Baldwin*, the Second Circuit indicated could be resolved by the district court without causing any potential problems for the bankruptcy proceedings. *Compare Baldwin*, 765 F.2d at 348 ("The possibility of conflicting decisions is far more serious in this complex Chapter 11 proceeding with its numerous indemnity claimants than would be the case when a District Court determines that a particular governmental enforcement action is within one of the exceptions to the automatic stay.").

Finally, an additional equitable consideration weighs in favor of deferring to the Bankruptcy Court. The Trustee represented in his letter that the existence of the D&O Policy may be relevant to the determination of whether a stay should apply in this case. *See* Letter 1-2. Indeed, the Trustee has consistently represented to the Bankruptcy Court his belief that the policy, and its

proceeds, are likely property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541. *See, e.g.*, *In re: Code Rebel Corp.*, Case No. 16-11236 (BLS) ¶ 10 (Bankr. D. Del.), Dkt. No. 20 (Jul. 27, 2016). The Bankruptcy Court has also twice approved stipulations between the Trustee and the Individual Defendants to permit those defendants to access portions of the proceeds from the insurance policy to pay for their defense without fully depleting the policy's limits. *See In re: Code Rebel Corp.*, Case No. 16-11236 (BLS) (Bankr. D. Del.), Dkt. No. 26 (Aug. 29, 2016); *In re: Code Rebel Corp.*, Case No. 16-11236 (BLS) (Bankr. D. Del.), Dkt. No. 38 (Jan. 19, 2017).

The Plaintiffs, who in any case ask this Court to defer to the Bankruptcy Court, filed a letter in response to the Trustee's, arguing that proceeds of the D&O Policy are not property of the Bankruptcy Court, and thus that an automatic stay designed to shield these proceeds would not be justified. *See* Dkt. No. 45, at 2. To support this argument, they cite to the Trustee's description of the policy in his first motion to the Bankruptcy Court for approval of the first stipulation, which reads: "The D&O Policy contains Insuring Clauses (A) – (D). Insuring Clause A covers loss arising from any claim made against a Former Director during the policy period for a wrongful act. Pursuant to Clause IV (H) of the D&O Policy, any loss resulting from claims under Insuring Clause (A) holds a priority in distribution of policy proceeds over claims against the Debtor. Further, the D&O Policy provides for the payment of defense costs as part of the loss and that any such payment reduces the limit of liability." *In re: Code Rebel Corp.*, Case No. 16-11236 (BLS) ¶ 22 (Del. Bkt. Ct.), Dkt. No. 20 (Jul. 27, 2016). The Plaintiffs argue that case law holds that, assuming the Trustee's description to be correct, the policy's proceeds are not property of the Debtor's estate. *See* Dkt. No. 45, at 2 (citing *In re Daisy Sys. Sec. Litig.*, 132 B.R. 752, 755 (N.D. Cal. 1991), *In re Louisana World Expo., Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987) ("*LWE*")). However, the question of whether the policy and its proceeds are property of

the Bankruptcy estate is in fact more complex than the Plaintiffs represent, and the Trustee's description of the policy does not make it evident that the proceeds are not property of the debtor's estate, nor conclusively resolve the issue. *Compare In re Vitek, Inc.*, 51 F.3d 530, 534-35 (5th Cir. 1995) (noting that, in *LWE*, "[t]he [insurance] policies . . . provided liability coverage *only* for the corporate debtor's directors and officers and for the obligation of the corporation to indemnify those directors and officers," and going on to state that the Fifth Circuit had "not yet grappled with how to treat the proceeds of a liability policy when (1) the policy-owning debtor is but one of two or more coinsureds or additional named insureds, (2) the rights of the other coinsured(s) or additional named insured(s) are *not* merely derivative of the rights of one primary named insured, and (3) the aggregate potential liability substantially exceeds the aggregate limits of available insurance coverage"); *with In re: Code Rebel Corp.*, Case No. 16-11236 (BLS) ¶¶ 21- 22 (Del. Bkt. Ct.), Dkt. No. 20 (Jul. 27, 2016) (in which the Trustee, describing the policy, suggests that, though indemnification of the former officers holds priority to other claims under the policy, "claims against the *Debtor*" may also be covered); *see also In re Sacred Heart Hosp. of Norristown*, 182 B.R. 413, 418, 421 (Bankr. E.D. Pa. 1995) (holding that, because "the Debtor's own liability exposure is also covered by the D & O Policy [in addition to the directors] . . . [the Debtor] ha[d] a sufficient interest in the Proceeds as a whole to bring them into the estate," and going on to criticize *In Re Daisy Systems* for any contrary holding).

Thus, the proper scope of the automatic stay in this case may turn on the precise contours of the insurance policy cited by the Trustee. This Court is reticent to adjudicate such an issue in the first instance where, first, it has not received a copy of the Policy; second, such adjudication would require determining in the first instance whether a valuable potential asset of the Debtor's Estate is or is not property covered by 11 U.S.C. § 541; and third, the Bankruptcy Court has in

fact resolved at least two motions involving, to some extent, this very question. Further, given that lawsuits in multiple jurisdictions have the potential to each exhaust the policy's limits, the importance of allowing the Bankruptcy Court to create consistency nationwide is all the more significant.

In opposition to these equitable concerns, the Individual Defendants argue only that judicial economy weighs in favor of this Court resolving their motion in the first instance. *See* Mot. to Stay at 2. Given that this Court would, in any case, need to order production of the D&O Policy to properly answer the question before it, and that the Individual Defendants have not addressed the significance of that policy (and no party has addressed any of the case law the Court cites above that is not referenced by the Plaintiffs), this concern is insufficient to tip the equities in favor of this Court determining the scope of the stay.

The Court thus uses its equitable powers to stay this matter for 60 days, to provide the Individual Defendants the opportunity to seek an order from the Bankruptcy Court addressing the scope of the automatic stay. Should the Individual Defendants fail to seek such an order, the Plaintiffs may write a letter to this Court in 60 days moving to lift the stay.

### III.   Conclusion

In conclusion, the Court hereby appoints Plaintiffs William Tran and Adrian Ybarra as lead Plaintiffs, approves the Rosen Law Firm, P.A., and Pomerantz LLP, as co-lead counsel for the purported class, and temporarily stays this matter to allow the Individual Defendants to seek their requested stay from the Bankruptcy Court. This resolves Dkt. Nos. 18, 23, 24, 28, 31, 35.

SO ORDERED

Dated: ~~February~~_____, 2017

New York, New York

_____
ALISON J. NATHAN
United States District Judge