# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT SPRINGER, et al., individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>    v.<br><br>CODE REBEL CORPORATION, et al.,<br><br>                  Defendants. | Case No. 16-cv-3492 (AJN) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSE REIMBURSEMENT, AND <u>COMPENSATORY AWARDS FOR LEAD PLAINTIFFS</u>**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ...................................................................................................... 4

    A.    The Application for an Award of Attorneys' Fees and Reimbursement of Expenses Is Reasonable and Should Be Approved.................................................. 4

        1.    The Requested Fee is Fair Under the Percentage-of-Recovery Method and the Second Circuit's *Goldberger* Factors............................................ 7

            a.    Class Counsel Expended Meaningful Time and Labor ................. 8

            b.    The Litigation Was Risky and Complex......................................... 9

            c.    The Settling Parties Were Represented by Experienced, High-Caliber Counsel Who Approved the Settlement......................... 14

            d.    The Requested Fee in relation to the Settlement is Fair, Reasonable, and Wholly Consistent with Case Law. ................... 15

            e.    Private Securities Suits Are an "Essential Supplement" to Criminal Prosecution and Civil Enforcement. .............................. 17

        2.    The Requested Fee is Reasonable Under the Lodestar Cross-Check. ...... 18

        3.    Lead Counsel Should Be Reimbursed for $13,107.67 in Litigation Expenses, Which Is Below the Already-Requested $30,000 Limit.......... 20

    B.    The Proposed Lead Plaintiffs' Awards Are Reasonable....................................... 22

III.    CONCLUSION.................................................................................................. 24

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013)...............................................................................................4, 17, 18

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ...............................................................................11

*Aponte v. Comprehensive Health Mgmt.*,
   No. 10 Civ. 4825, 2013 WL 1364147, 2013 U.S. Dist. LEXIS 47637
   (S.D.N.Y. Apr. 2, 2013)...........................................................................................20

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985).............................................................................................4, 17

*Becher v. Long Island Lighting Co.*,
   64 F. Supp. 2d 174 (E.D.N.Y. 1999) ......................................................................17

*Berchin v. Gen. Dynamics Corp.*,
   No. 93 Civ. 1325 (JSM), 1996 WL 465752, 1996 U.S. Dist. LEXIS 11777
   (S.D.N.Y. Aug. 13, 1996) ........................................................................................17

*Blum v. Stenson*,
   465 U.S. 886 (1984)......................................................................................5, 15, 19

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)...................................................................................................4

*Brown v. Phillips Petroleum Co.*,
   838 F.2d 451 (10th Cir. 1988) ...................................................................................5

*Camden I Condo. Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ...................................................................................6

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).........................................................................9, 15, 19

*City of Providence v. Aéropostale, Inc.*,
   No. 11 Civ. 7132 (CM), 2014 WL 1883494, 2014 U.S. Dist. LEXIS 64517
   (S.D.N.Y. May 9, 2014).............................................................................................11

*Collins v. Olin Corp.*,
   No. 03-cv-945 (CFD), 2010 WL 1677764, 2010 U.S. Dist. LEXIS 39862 (D.
   Conn. Apr. 21, 2010) .................................................................................................17

*Craft v. County of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ...............................................................20

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011) ................................................................20

*DiGiacomo v. Plains All American Pipeline*,
   No. Civ.A.H-99-4137, 2001 WL 34633373, 2001 U.S. Dist. LEXIS 25532
   (S.D. Tex. Dec. 19, 2001) ...................................................................................20

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ............................................................................................18

*Eltman v. Grandma Lee's, Inc.*,
   No. 82 Civ. 1912, 1986 WL 53400, 1986 U.S. Dist. LEXIS 24902 (E.D.N.Y.
   May 28, 1986) .....................................................................................................15

*Fleisher v. Phoenix. Life Ins. Co.*,
   No. 11-cv-8405 (CM), 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9,
   2015) .....................................................................................................................5

*Fogarazzo v. Lehman Bros.*,
   No. 03 Civ. 5194 (SAS), 2011 WL 671745, 2011 U.S. Dist. LEXIS 17747
   (S.D.N.Y. Feb. 23, 2011) ....................................................................................16

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ..............................................................................12

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ........................................................................ *passim*

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) .................................................................................5

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................................19

*Hicks v. Morgan Stanley & Co.*,
   No. 01 Civ. 10071 (RJH), 2005 WL 2757793, 2005 U.S. Dist. LEXIS 24890
   (S.D.N.Y. Oct. 19, 2005) ....................................................................................24

*In re Amaranth Natural Gas Commodities Litig.*,
   No. 07 Civ. 6377 (SAS), 2012 WL 2149094, 2012 U.S. Dist. LEXIS 82599
   (S.D.N.Y. June 8, 2012) ......................................................................................16

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   No. 02 Civ. 5575 (SWK), 2006 WL 903236, 2006 U.S. Dist. LEXIS 17588
   (S.D.N.Y. Apr. 6, 2006) ................................................................................10, 11

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  No. 02-cv-5575 (SWK), 2006 WL 3057232, 2006 U.S. Dist. LEXIS 77926
  (S.D.N.Y. Oct. 25, 2006) .......................................................................................7, 18

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)....................................................................22

*In re BioScrip, Inc. Sec. Litig.*,
  No. 13-cv-6922 (AJN), 2017 WL 3208941, 2017 U.S. Dist. LEXIS 118881
  (S.D.N.Y. July 26, 2017) ................................................................................ *passim*

*In re Blech Sec. Litig.*,
  No. 94 Civ. 7696 (RWS), 2002 WL 31720381, 2002 U.S. Dist. LEXIS 23170
  (S.D.N.Y. Nov. 27, 2002) .......................................................................................17

*In re Bristol-Myers*,
  361 F. Supp. 2d 229 (S.D.N.Y. 2005)....................................................................18

*In re Charter Communications, Inc., Sec. Litig.*,
  No. 02-CV-1186, 2005 WL 4045741, 2005 U.S. Dist. LEXIS 14772 (E.D.
  Mo. June 30, 2005) .................................................................................................20

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014)...............................................................6, 7, 19

*In re Comverse Tech., Inc.*,
  No. 06-cv-1825 (NGG) (RER), 2010 WL 2653354, 2010 U.S. Dist. LEXIS
  63342 (E.D.N.Y. June 23, 2010) ............................................................................10

*In re Cont'l Illinois Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ..................................................................................19

*In re Corel Corp. Sec. Litig.*,
  293 F. Supp. 2d 484 (E.D. Pa. 2003) .....................................................................17

*In re E. W. Blanch Holdings, Inc. Sec. Litig.*,
  No. 01-258, 2003 WL 23335319, 2003 U.S. Dist. LEXIS 26402 (D. Minn.
  June 16, 2003)..........................................................................................................17

*In re Elan Sec. Litig.*,
  385 F. Supp. 2d 363 (S.D.N.Y. 2005).....................................................................20

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05-cv-10240 (CM), 2007 WL 2230177, 2007 U.S. Dist. LEXIS 57918
  (S.D.N.Y. July 27, 2007) ........................................................................................19

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
No. CIV.A. 08-11064-NMG, 2012 WL 6184269, 2012 U.S. Dist. LEXIS
174711 (D. Mass. Dec. 10, 2012) .......................................................................23

*In re Flag Telecom Holdings*,
No. 02-cv-3400 (CM) (PED), 2010 WL 4537550, 2010 U.S. Dist. LEXIS
119702 (S.D.N.Y. Nov. 5, 2010) ..............................................................10, 15, 21

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................16, 21, 22

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, 2007 U.S. Dist. LEXIS
68964 (E.D.N.Y. Sept. 18, 2007).......................................................................22

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................10

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)...................................................................................5

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403, 2005 U.S. Dist. LEXIS 13555
(C.D. Cal. June 10, 2005) ................................................................................17

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)........................................................................11

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003)...............................................................21

*In re Marsh & McLennan Cos. Sec. Litig.*,
No. 04 Civ. 8144 (CM), 2009 WL 5178546, 2009 U.S. Dist. LEXIS 120953
(S.D.N.Y. Dec. 23, 2009) ............................................................................11, 23

*In re Med. X-Ray Film Antitrust Litig.*,
No. CV-93-5904, 1998 WL 661515, 1998 U.S. Dist. LEXIS 14888 (E.D.N.Y.
Aug. 7, 1998) ..................................................................................................12

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................21

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...........................................................21, 23

*In re Monster Worldwide, Inc. Sec. Litig.*,
No. 07-cv-02237 (JSR), 2008 WL 9019514 (S.D.N.Y. Nov. 25, 2008) ................23

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ..................................................................17

*In re Petrobras Sec. Litig.*,
   312 F.R.D. 354 (S.D.N.Y. 2016) ........................................................................15

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ..................................................................17

*In re Silvercorp Metals, Inc. Sec. Litig.*,
   No. 12-cv-9456, slip op. (S.D.N.Y. Feb. 13, 2014) .............................................23

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) .............................................................5, 19

*In re Thirteen Appeals Arising
out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir.
   1995) ......................................................................................................................5

*In re Top Tankers, Inc. Sec. Litig.*,
   No. 06 Civ. 13761, 2008 WL 2944620, 2008 U.S. Dist. LEXIS 58106
   (S.D.N.Y. July 31, 2008) ....................................................................................24

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) ..................................................................18

*In re Van Der Moolen Holding N.V. Sec. Litig.*,
   No. 03-CV-8284 (RWS), 2006 U.S. Dist. LEXIS 98433 (S.D.N.Y. Dec. 6,
   2006) ....................................................................................................................17

*In re Vivendi Universal, S.A., Sec. Litig.*,
   No. 02 Civ. 5571 (RJH), 2012 WL 362028, 2012 U.S. Dist. LEXIS 21732
   (S.D.N.Y. Feb. 6, 2012), *reconsideration denied*, 861 F. Supp. 2d 262
   (S.D.N.Y. 2012) ...................................................................................................12

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) .............14, 15

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................18

*In re Xcel Energy, Inc.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) .............................................................11, 23

*J. I. Case Co. v. Borak*,
   377 U.S. 426 (1964) .............................................................................................18

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) .........................................................................5

*Khait v. Whirlpool Corp.*,
   No. 06-6381 (ALC), 2010 WL 2025106, 2010 U.S. Dist. LEXIS 4067
   (E.D.N.Y. Jan. 20, 2010) ...........................................................................17

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
   No. 03-cv-4372 (DMC), 2009 WL 4730185, 2009 U.S. Dist. LEXIS 112989
   (D.N.J. Dec. 4, 2009) .................................................................................10

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
   No. 02 C 5893, 2016 WL 374132, 2016 U.S. Dist. LEXIS 11164 (N.D. Ill.
   Feb. 1, 2016) .............................................................................................12

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
   487 F.2d 161 (3d Cir. 1973).......................................................................19

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................. *passim*

*McDaniel v. Cnty. Of Schenectady*,
   595 F.3d 411 (2d Cir. 2010).........................................................................6

*McKenzie Constr. Inc. v. Maynard*,
   758 F.2d 97 (3d Cir. 1985)..........................................................................14

*Miltland Raleigh-Durham v. Myers*,
   840 F. Supp. 235 (S.D.N.Y. 1993) .............................................................21

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)....................................................................................15

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   No. 06 Civ 4270 (PAC), 2009 WL 5851465, 2009 U.S. Dist. LEXIS 27899
   (S.D.N.Y. Mar. 31, 2009) ...........................................................................16

*Munter v. Hickey (In re CRM Holdings, Ltd. Secs. Litig.)*,
   634 Fed. Appx. 59 (2d Cir. 2016) ...............................................................21

*Rawlings v. Prudential-Bache Props.*,
   9 F.3d 513 (6th Cir. 1993) ............................................................................5

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.*,
   818 F.2d 278 (2d Cir. 1987).........................................................................21

*Robbins v. Koger Props.*,
   116 F.3d 1441 (11th Cir. 1997) ...................................................................11

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185 (S.D.N.Y. 1997)........................................................................19

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................................22

*Shapiro v. JP Morgan Chase & Co.*,
  No. 11-Civ-8331 (CM), 2014 WL 1224666, 2014 U.S. Dist. LEXIS 37872
  (S.D.N.Y. Mar. 21, 2014) ........................................................................................9

*Silverberg v. People's Bank*,
  23 F. App'x 46 (2d Cir. 2001) ...............................................................................16

*Silverstein v. AllianceBernstein LP*,
  No. 09-CV-5904 (JPO), 2013 WL 7122612, 2013 U.S. Dist. LEXIS 179734
  (S.D.N.Y. Dec. 20, 2013) ......................................................................................14

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ................................................................................5

*State of W. Va. v. Chas. Pfizer & Co.*,
  314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ................10

*Stefaniak v. HSBC Bank USA, N.A.*,
  No. 05-CV-720 S, 2008 WL 7630102, 2008 U.S. Dist. LEXIS 53872
  (W.D.N.Y. June 28, 2008) .....................................................................................17

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................7, 16

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993) ..................................................................................6

*Taft v. Ackermans*,
  No. 02 Civ 7951 (PKL), 2007 WL 414493, 2007 U.S. Dist. LEXIS 9144
  (S.D.N.Y. Jan. 31, 2007)........................................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)................................................................................................18

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ...............................................................................5, 6

*Velez v. Novartis Pharm. Corp.*,
  No. 04 Civ. 09194 (CM), 2010 WL 4877852, 2010 U.S. Dist. LEXIS 125945
  (S.D.N.Y. Nov. 30, 2010) .......................................................................................16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005).................................................................................................5, 12

**Statutes**

15 U.S.C. § 78u-4 ...............................................................................................................2, 6, 22

## I.        INTRODUCTION

Co-lead counsel Pomerantz LLP ("Pomerantz") and The Rosen Law Firm, P.A. ("Rosen Law," together with Pomerantz, "Lead Counsel") for co-lead plaintiffs William Tran and Adrian Ybarra (together, "Lead Plaintiffs") respectfully submit this memorandum of law in support of Lead Counsel's motion for (i) an award of attorneys' fees of one-third (33 and 1/3%) of the $1,000,000 cash settlement resolving all claims in this Action against Defendants, as set forth in the Settlement Agreement and Release, dated May 15, 2017 ("Agreement") (Docket ("Dkt.") No. 60), plus accrued interest, (ii) reimbursement of necessary and reasonable litigation expenses of approximately $13,107.67, and (iii) compensatory awards to Lead Plaintiffs of $2,000 ($1,000 each).[1]

Lead Plaintiffs and Lead Counsel achieved the $1,000,000 settlement, which provides a significant cash benefit for the Settlement Class.  Lead Counsel seeks attorneys' fees of $333,333.33.  The fees are fair, reasonable, and consistent with the range of percentages that courts have awarded in securities class-action settlements of this size.  Lead Counsel expended meaningful time and labor in advancing this Action and the Settlement.  They accomplished the following, without limitation: moved for lead-plaintiff appointment on behalf of Lead Plaintiffs, which entailed researching securities laws, the alleged fraudulent scheme, and Lead Plaintiffs' damages, amongst other things; conducted an investigation into the alleged fraudulent scheme to plead an initial and amended complaint, which entailed scouring public records, amongst other things; drafted an initial and amended complaint; prepared documents to preserve Lead Plaintiffs

---

[1] Unless otherwise indicated, all capitalized terms herein have the meanings set forth in the Agreement.  "Dkt." references herein are to the *Springer, et al., v. Code Rebel Corp., et al.*, No. 1:16-cv-03492 (AJN) (S.D.N.Y.) ("Action"), docket.  The Joint Declaration of Jeremy A. Lieberman and Phillip Kim in Support of (1) Lead Plaintiffs' Motion for Final Approval of the Proposed Class Action Settlement and Plan of Allocation and (2) Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Lead Plaintiffs, which is filed concurrently with this Memorandum ("Declaration" or "Dec."), is an integral part of this submission.  For sake of brevity, the Court is respectfully referred to it for a detailed description of the history of the Action, the nature of the claims, the negotiations leading to the Settlement, the risks of continued litigation, and the terms of the Plan of Allocation.  All citations to "¶" and "Ex." in this Memorandum refer, respectively, to paragraphs in and exhibits to the Declaration.

and the Settlement Class' rights in connection with Defendant Code Rebel Corporation's ("Code Rebel" or the "Company") voluntary petition in the U.S. Bankruptcy Court for the District of Delaware ("Bankruptcy Court") under Chapter 7 of the U.S. Bankruptcy Code ("Chapter 7"), *In re Code Rebel Corporation*, No. 16-11236 ("Code Rebel Bankruptcy Proceeding"); consulted with a damages expert to analyze the amount of damages recoverable from Defendants on behalf of the Settlement Class; participated in several telephonic settlement conferences and correspondence related thereto on Lead Plaintiffs' behalf with Reid Dabney, Arben Kryeziu n/k/a Arben Kane, David Dwelle, James Canton, and Volodymyr Bykov (collectively, the "Settling Defendants"), and the Chapter 7 Trustee for the Code Rebel Bankruptcy Proceeding; negotiated the contours of agreements with several parties and their counsel; and drafted the terms of relevant settlement-related documents, including, without limitation, the Agreement filed in this Action (Docket No. 60), Lead Plaintiffs' Motion for Preliminary Approval of Proposed Settlement, For Approval of the Form and Manner of Notice, and to Schedule a Hearing on Final Approval of the Settlement and on Plaintiffs' Counsel's Application for an Award of Attorneys' Fees and Expenses, and Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and the documents related to the motion.

The requested attorneys' fee award represents a lodestar multiplier of approximately 2.02, based on Lead Counsel's lodestar of $165,094.25 (for 284.93 hours of attorney and professional work); this lodestar multiplier is consistent with those that courts have awarded in securities class-action settlements of this complexity.  *See* Declaration of Jeremy A. Lieberman on behalf of Pomerantz concerning Attorneys' Fees and Expenses ("Pomerantz Dec.") and Jacob A. Goldberg on Behalf of Rosen Law concerning Attorneys' Fees and Expenses ("Rosen Law Dec.")[2], filed as Exhibits 1 and 2, respectively, to the Declaration.

This litigation was risky and complex for several reasons in addition to the daunting requirements of the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109

---

[2] On March 2, 2017, the Court entered a Memorandum & Order that appointed Messrs. Tran and Ybarra as co-Lead Plaintiffs and Pomerantz and Rosen Law as co-Lead Counsel (Dkt. No. 53).

Stat. 737, 15 U.S.C. §78u-4(f)(7) ("PSLRA").   During the Action, it was unlikely that Lead Plaintiffs and Lead Counsel could have relied on formal findings from parallel government investigations that would have publicly revealed concrete and admissible facts showing Defendants' fraud.   Discovery also posed a heavy burden on Lead Plaintiffs because of Defendants' potential defenses to discovery that they do not have possession, custody, nor control of key documents; instead, they could argue that the Trustee (as defined below) has custody over, possession, or control of the documents.   The Trustee could object to discovery requests and argue that this Action should be stayed pending the Code Rebel Bankruptcy Proceedings.

Even if Lead Plaintiffs advanced past Defendants' potential motions to dismiss and summary-judgment motions, and Lead Plaintiffs prevailed on all of the elements of a securities-fraud claim at trial and secured damages for the Settlement Class, a significant hurdle remained: collecting the judgement from Defendants or their insurers.   Defendants' funds available to satisfy a judgment in this Action would be limited.   Their insurance policies could rapidly deplete, given the limited insurance proceeds available and the certain wasting of those proceeds, as well as the existence of other actions in which Defendants are implicated, such as the Code Rebel Bankruptcy Proceedings and California Actions, that may be paid from the same, limited insurance proceeds. Defendants could have limited assets, if any, available to satisfy a judgment.   Moreover, if this Action is stayed pending the Code Rebel Bankruptcy Proceedings (an issue that would likely be contentious, *see* Dkt. Nos. 35-40, 45), Lead Plaintiffs would be shackled from pursuing their claims, while any available proceeds are rapidly depleted from the Code Rebel Bankruptcy Proceedings.

Lead Counsel also seeks reimbursement of out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $13,107.67.   *See* Dec. Exs. 1 (Pomerantz Dec.) and 2 (Rosen Law Dec).   This amount is below the estimated $30,000 limit of litigation-expense reimbursement that Lead Plaintiffs requested in their motion for preliminary approval of the Settlement.   These expenses were both reasonable and necessary to successfully prosecute and resolve the claims against the Settling Defendants.

Lead Plaintiffs well deserve the modest request for an award of $1,000 each to compensate them for their time and service to the Settlement Class, as well as to function as incentives to serve as lead plaintiffs.

"Congress, the Executive Branch, and [the Supreme] Court, moreover, have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions […].'" *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 478 (2013).  Lead Plaintiffs' and Lead Counsel's contributions here exemplify the value of this "essential supplement."

## II.        ARGUMENT[3]

### A.        The Application for an Award of Attorneys' Fees and Reimbursement of Expenses Is Reasonable and Should Be Approved.

The U.S. Supreme Court and the U.S. Court of Appeals for the Second Circuit have both recognized that where counsel's efforts have created a "common fund" for the benefit of a class, counsel should be compensated from that common fund.  *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Attorneys' fee awards from common funds "serve the dual purposes of encouraging representatives to seek redress for injuries caused to public investors and discouraging future misconduct of a similar nature." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).  The common-fund doctrine also prevents unjust enrichment of class members who benefit from a lawsuit without paying for its costs.  *See Boeing*, 444 U.S. at 478.  Because the common-fund doctrine provides incentives for both plaintiffs and their counsel and serves to deter misconduct, the Supreme Court has emphasized that private securities actions "provide a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985).

---

[3]A more-detailed description of the procedural history and considerations leading to the Settlement is in the Memorandum of Law in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, filed concurrently herewith ("Final Approval Brief").

Two methods can be used for calculating attorneys' fees under the common-fund doctrine: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, which involves multiplying the number of hours reasonably expended by a reasonable hourly rate and then applying a discretionary "multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Goldberger*, 209 F.3d at 47; *see also In re BioScrip, Inc. Sec. Litig.*, No. 13-cv-6922 (AJN), 2017 WL 3208941, 2017 U.S. Dist. LEXIS 118881, at *11 (S.D.N.Y. July 26, 2017). In either case, a "court has considerable discretion to award a fee reflecting a lodestar enhancement designed to compensate attorneys for, *inter alia*, 'the risk of the litigation.'" *Id.* The Supreme Court has consistently held that the percentage-of-recovery method is an appropriate method for determining attorneys' fees in common-fund cases. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

"The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005)[4]; *see also Fleisher v. Phoenix. Life Ins. Co.*, No. 11-cv-8405 (CM), 2015 U.S. Dist. LEXIS 121574, at *48-49 & n.5 (S.D.N.Y. Sept. 9, 2015) (collecting cases); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 & n.7 (S.D.N.Y. 2008) (noting a "strong consensus—both in this Circuit and across the country—in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery").[5] District Courts in the Second Circuit typically use the percentage-

---

[4] Internal citations and quotations are omitted herein, unless stated otherwise.

[5] The use of the percentage method in common-fund cases has been approved by several other Circuits. *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988). The Eleventh and District of Columbia Circuits even *require* the percentage method in common-fund

of-recovery method in common-fund cases.  *See In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014).  Using the percentage method can benefit a class in two ways: "first, by aligning counsel's incentives with the class at the time the settlement is negotiated (by tying counsel's recovery to the size of the fee) and second, by counteracting any incentive counsel might have to eschew early settlement so as to increase their lodestar over the course of protracted litigation."  *BioScrip*, 2017 U.S. Dist. LEXIS 118881, at *31.

In contrast, the lodestar method "creates an incentive for attorneys to bill as many hours as possible, to do unnecessary work, and for these reasons also can create a disincentive to early settlement."  *McDaniel v. Cnty. Of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010).  Moreover, it "compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits," resulting in an "an inevitable waste of judicial resources."  *Goldberger*, 209 F.3d at 49.  Therefore, the Second Circuit encourages district courts to use the lodestar method primarily as a "cross-check" for the percentage method.  *Id.* at 50.  The percentage method is especially favored in securities cases. "Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation."  *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012); *see* 15 U.S.C. § 78u-4(a)(6) (providing that a fee award cannot exceed a "reasonable percentage of the amount" paid to the class); *Maley*, 186 F. Supp. 2d at 370 (when drafting the PSLRA, Congress "indicated a preference for the use of the percentage method").  Where, as here, the Settlement Class' recovery consists of a monetary lump sum (as opposed to injunctive relief whose monetary value may be unclear or contested), the percentage method is especially straightforward and predictable.

Lead Plaintiffs' contributions and Lead Counsel's representation in this Action embodies the policies intended to encourage private advocacy as a weapon to enforce the securities laws. Their requested attorneys' fees of one-third (33 and 1/3%) of the $1,000,000 recovery (or

---

cases. *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993).

$333,333.33), and reimbursement of $13,107.67 of litigation expenses, which were necessary and reasonable, are very much warranted.

### 1. The Requested Fee is Fair Under the Percentage-of-Recovery Method and the Second Circuit's *Goldberger* Factors.

In *Goldberger*, the Second Circuit examined the history of alternative methods for calculating attorneys' fees and expressly approved use of the percentage-of-recovery method in awarding fees from a common fund. 209 F. 3d at 50. Indeed, the clear trend within the Second Circuit and the U.S. District Court for the Southern District of New York is to utilize the percentage-of-recovery method when awarding attorneys' fees in common-fund cases. *See BioScrip*, 2017 U.S. Dist. LEXIS 118881, at *56 (stating that the trend in the Second Circuit has been toward using the percentage-of-recovery method "particularly in complex securities class actions"); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (stating that "the trend [is] in favor of the percentage-of-recovery approach ... within this district"); *Maley*, 186 F. Supp. 2d at 370 (citing *Goldberger*, 209 F.3d at 50, and noting "the trend within this Circuit is to use the percentage of recovery method to calculate fee awards to class counsel" in common-fund cases). In fact, while the lodestar method "tempts lawyers to run up their hours," the percentage-of-recovery method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Colgate-Palmolive*, 36 F. Supp. 3d at 348.

In determining a reasonable fee under the percentage-of-recovery method, courts look to the factors articulated in *Goldberger*, 209 F.3d at 50: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02-cv-5575 (SWK), 2006 WL 3057232, at *11, 2006 U.S. Dist. LEXIS 77926, at *8 (S.D.N.Y. Oct. 25, 2006) (citing *Goldberger*, 209 F.3d at 50).

All of these factors support Lead Counsel's requested fee of one-third (33 and 1/3%) of the $1,000,000 recovery, or $333,333.33, plus accrued interest, which is fair and reasonable for litigation of this kind and wholly consistent with the range of percentages that courts in this Circuit have awarded in securities class-action settlements of this size.   A study directly addressing attorneys' fees in settlements of a comparable size to the proposed Settlement was in NERA Economic Consulting's *Recent Trends in Securities Class Action Litigation: 2016 Full-Year Review* (2017) ("2016 NERA Report") (Dec. Ex. 7).   The 2016 NERA Report concluded that between 1996 and 2011, for securities class-action settlements less than $5,000,000, the median plaintiffs' attorneys' fee award was 33.3% of the settlement, and between 2012 and 2016, the median plaintiffs' attorneys' fee award was 30%.  2016 NERA Report at 39.  Ultimately, both Lead Plaintiffs and Defendants were represented by experienced, high-caliber counsel who believed that the Settlement was in their clients' best interests.

### a.    Class Counsel Expended Meaningful Time and Labor

Throughout the litigation, Lead Counsel has focused on seeking the most successful outcome for the Settlement Class, whether through settlement or trial, as efficiently as possible. Indeed, early settlements are encouraged by courts and are consistent with the Federal Rules of Civil Procedure ("Rule"), which emphasize the "just, speedy, and inexpensive determination of every action."  Rule 1.

To achieve this recovery, Lead Counsel devoted a reasonable and appropriate amount of time and resources to litigating this Action.  Lead Counsel accomplished the following, without limitation: moved for lead-plaintiff appointment on behalf of Lead Plaintiffs William Tran and Adrian Ybarra, which entailed researching securities laws, the alleged fraudulent scheme, and Lead Plaintiffs' damages, amongst other things; conducted an extensive investigation into the alleged fraudulent scheme to plead an initial and amended complaint and drafted an initial and amended complaint; prepared, reviewed, and commented upon documents to preserve Lead Plaintiffs and the Settlement Class' rights in connection with Code Rebel Corporation's voluntary petition in the United States Bankruptcy Court for the District of Delaware under Chapter 7, *In re*

8

*Code Rebel Corporation*, No. 16-11236; consulted with a damages expert to analyze the amount of damages recoverable from Defendants on behalf of the Settlement Class; participated in several telephonic settlement conferences and correspondence related thereto on Lead Plaintiffs' behalf with the Settling Defendants and the Chapter 7 Trustee for the Code Rebel Bankruptcy Proceeding; negotiated the contours of agreements with several parties and their counsel; and drafted the terms of relevant settlement-related documents, including, without limitation, the Agreement filed in this Action (Docket No. 60), Lead Plaintiffs' Motion for Preliminary Approval of Proposed Settlement, For Approval of the Form and Manner of Notice, and to Schedule a Hearing on Final Approval of the Settlement and on Plaintiffs' Counsel's Application for an Award of Attorneys' Fees and Expenses, and Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and the documents related to the motion.  Dec. ¶35.  As set forth in the Pomerantz Dec. and Rosen Law Dec., filed as Dec. Exs. 1 and 2, respectively, Lead Counsel expended 284.93 hours for an aggregate lodestar of $165,094.25 in litigating this Action.  The requested attorneys' fees were set forth in the Notice distributed to the Settlement Class.  There has not been a single objection to either, evidencing the reasonableness of the request.

### b.    The Litigation Was Risky and Complex.

"[T]he risk of success [is] 'perhaps the foremost' factor to be considered in determining" a reasonable award of attorneys' fees.  *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JP Morgan Chase & Co.*, No. 11-Civ-8331 (CM), 2014 WL 1224666, at *21, 2014 U.S. Dist. LEXIS 37872, at *75 (S.D.N.Y. Mar. 21, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis.").  "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).  In applying this factor, "'[l]itigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent

9

events." *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (quoting *Goldberger*, 209 F.3d at 55). Courts have also repeatedly recognized that "class actions confront even more substantial risks than other forms of litigation[,]"*In re Comverse Tech., Inc.*, No. 06-cv-1825 (NGG) (RER), 2010 WL 2653354, 2010 U.S. Dist. LEXIS 63342, at *15 (E.D.N.Y. June 23, 2010), and that "[s]ecurities class actions such as this are 'notably difficult and notoriously uncertain[,]'" *In re Flag Telecom Holdings*, No. 02-cv-3400 (CM) (PED), 2010 WL 4537550, 2010 U.S. Dist. LEXIS 119702, at *78 (S.D.N.Y. Nov. 5, 2010). This Action was no different.

This Action has significant merit, and the fact that Defendants are willing to settle for $1 million shows that it should have been brought. But litigation is inherently risky, and cases far less complex and difficult than this one have been lost on motion, at trial, or on appeal. As stated in *State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971):

> It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced. Merely by way of example, two instances in this Court may be cited where offers of settlement were rejected by some plaintiffs and were disapproved by this Court. The trial in each case then resulted unfavorably for plaintiffs; in one case they recovered nothing and in the other they recovered less than the amount which had been offered in settlement.

Lead Counsel was able to achieve an excellent recovery for the Class without protracted litigation, but this does not mean that this case was risk-free. "It is well-established that litigation risk must be measured as of when the case is filed." *Goldberger*, 209 F.3d at 55. Those risks were considerable in May 2016, when Lead Counsel had to commit time and resources to a case at its nascence with no guarantee of success. Courts have repeatedly recognized the "notorious complexity" of securities class-action litigation. *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575 (SWK), 2006 WL 903236, 2006 U.S. Dist. LEXIS 17588, at *31 (S.D.N.Y. Apr. 6, 2006); *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, 2007 U.S. Dist. LEXIS 9144, at *29 (S.D.N.Y. Jan. 31, 2007); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No.

03-cv-4372 (DMC), 2009 WL 4730185, 2009 U.S. Dist. LEXIS 112989, at *24 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex"). Courts have also recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA" and other changes in the law. *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL Time Warner*, 2006 WL 903236, 2006 U.S. Dist. LEXIS 17588, at *33 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). Such was the case here.

Securities class actions are notoriously complex and unpredictable. Even where ultimately successful, they can last many years longer than anyone anticipated—during which time plaintiffs' counsel must devote thousands of attorney hours, pay regular overhead, and advance litigation costs (including for experts). *See, e.g., City of Providence v. Aéropostale, Inc*., No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, 2014 U.S. Dist. LEXIS 64517, at *40-41 (S.D.N.Y. May 9, 2014) (describing the ways in which "the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis"). The risk of no recovery in complex cases of this type is very real. "Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc*., 364 F. Supp. 2d 980, 994 (D. Minn. 2005); *see also In re Marsh & McLennan Cos. Sec. Litig*., No. 04 Civ. 8144 (CM), 2009 WL 5178546, 2009 U.S. Dist. LEXIS 120953, at *54 (S.D.N.Y. Dec. 23, 2009) (collecting cases). Even plaintiffs who obtain substantial jury verdicts at trial may find their judgment overturned on appeal or on a post-trial motion. *See, e.g., Robbins v. Koger Props*., 116 F.3d 1441, 1448-49 (11th Cir. 1997) (overturning $81 million jury verdict for plaintiffs and rendering judgment for defendant); *Anixter v. Home-Stake Prod. Co*., 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning $40 million jury verdict for plaintiffs, in a case filed in 1973 and tried in 1988, on the basis of a 1994 Supreme Court opinion).

To provide one notable example, in a securities class action filed in 2002, plaintiffs won a favorable jury verdict in 2009 and a favorable judgment in 2013, only for the Seventh Circuit in

2015 to vacate and remand for a new trial primarily on the issue of loss causation. *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 412 (7th Cir. 2015). As of April 25, 2016, the parties are once again engaged in contentious pre-trial litigation over experts and other evidentiary issues. *See, e.g., Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02 C 5893, 2016 WL 374132, 2016 U.S. Dist. LEXIS 11164, at *5 (N.D. Ill. Feb. 1, 2016). Not a single class member has received a penny, and the case is likely to continue for years to come. *See also In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 Civ. 5571 (RJH), 2012 WL 362028, 2012 U.S. Dist. LEXIS 21732 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery), *reconsideration denied*, 861 F. Supp. 2d 262 (S.D.N.Y. 2012).

This Action was particularly risky and complex for several reasons.[6] Lead Plaintiffs and Lead Counsel have no expectation of assistance during potential discovery in this Action from any parallel governmental investigations. It is unlikely that during this Action's pendency and discovery period, Lead Plaintiffs and Lead Counsel could rely on formal findings from potential parallel government investigations that would be revealed and present admissible facts showing Defendants' fraud. This inability to rely upon findings from a government investigation indicates increased risk and weighs in favor of the requested fee. *See, e.g.*, *Wal-Mart*, 396 F.3d at 122, 124 (citing positively district court's analysis on fee question, which had relied significantly on fact that plaintiffs could not rely on government investigation); *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, 1998 U.S, Dist. LEXIS 14888, at *22-23 (E.D.N.Y. Aug. 7, 1998) (awarding 33% of the fund in part because "[t]his is not a case where plaintiffs' counsel can be seen as jackals to the government's lion, arriving on the scene after some enforcement or administrative agency has made the kill"). The facts had to be investigated independently: first informally so as to satisfy the heightened pleading standards of the PSLRA and thus overcome

---

[6] The Action's complexities and risks are addressed more fully in the Final Approval Brief.

Defendants' inevitable motion to dismiss, and then through formal discovery to further substantiate the allegations in the complaint.

Discovery also imposed a heavy burden on Lead Plaintiffs.  During discovery, Defendants could argue that they do not have possession, custody, nor control of key documents.  Dec. ¶41. The Bankruptcy Court appointed Jeoffrey L. Burtch as the Chapter 7 Trustee for the Code Rebel Bankruptcy Proceeding ("Trustee").  Dec. ¶6.  Defendants could argue that the Trustee has custody over, possession, or control of the documents.  Dec. ¶41.  The Trustee could object to discovery requests and argue that this Action should be stayed pending the Code Rebel Bankruptcy Proceedings.  *Id.*

Even if Lead Plaintiffs advanced past Defendants' potential motions to dismiss and summary-judgment motions, and Lead Plaintiffs prevailed on all of the elements of a securities-fraud claim at trial and secured damages for the Settlement Class, a significant hurdle remained: collecting the judgement from Defendants or their insurers.  Dec. ¶48.  Defendants' funds available to satisfy a judgment in this Action would be limited.  *Id.*  Their insurance policies could rapidly deplete, given the limited insurance proceeds available and the certain wasting of those proceeds, as well as the existence of other actions in which Defendants are implicated, such as the Code Rebel Bankruptcy Proceedings and California Actions, that may be paid from the same, limited insurance proceeds.  *Id.*  Defendants could have limited assets, if any, available to satisfy a judgment.  *Id.*  Moreover, if this Action is stayed pending the Code Rebel Bankruptcy Proceedings (an issue that would likely be contentious, *see* Dkt. Nos. 35-40, 45), Lead Plaintiffs would be shackled from pursuing their claims, while any available proceeds are rapidly depleted from the Code Rebel Bankruptcy Proceedings.  *Id.*  Given Defendant's wasting, limited insurance policies and the Code Rebel Bankruptcy Proceedings, the risk of obtaining a smaller recovery—or no recovery at all—increased dramatically if litigation continued.

          **c.**      **The Settling Parties Were Represented by Experienced, High-Caliber Counsel Who Approved the Settlement.**

The result achieved and the quality of the services provided are important factors to be considered in determining the amount of reasonable attorneys' fees under a percentage-of-fund analysis. *See Goldberger*, 209 F.3d at 50; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745, 748 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). "[T]he quality of representation is best measured by results, and [ ] such results may be calculated by comparing the extent of possible recovery with the amount of actual verdict or settlement." *Goldberger*, 209 F.3d at 55. "[A] prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." *McKenzie Constr. Inc. v. Maynard*, 758 F.2d 97, 101-02 (3d Cir. 1985). Here, Lead Counsel effectively and efficiently recovered $1 million, which is estimated to represent approximately 16.67% of the aggregate estimated damages, which is based on an analysis performed by Lead Counsel with consultation from the Stanford Consulting Group, Inc., which provides research, analysis, and expert testimony in complex business litigation, particularly securities class actions. Dec. ¶51. This recovery well exceeds the median settlements for similar securities class actions.[7]

The positive reaction by Settlement Class Members confirms the quality of Lead Counsel's representation. The Settlement Class is overwhelmingly in favor of the Settlement. Summary Notice was published on July 31, 2017, and notice packages have been mailed to 5,207 potential Settlement Class Members and letters were mailed or emailed to 1,472 potential nominees. Dec. Ex. 3 (Evans Dec.) at ¶¶5-6, 10, Exs. B & C. As of October 30, 2017, not a single Settlement Class Member has objected to the Settlement. *Id.* at ¶13.; *see also Silverstein v. AllianceBernstein LP*, No. 09-CV-5904 (JPO), 2013 WL 7122612, 2013 U.S. Dist. LEXIS 179734, at *25 (S.D.N.Y. Dec. 20, 2013) ("No Class Member objected to Class Counsel's request for 33 1/3% of the fund, which also provides support for Class Counsel's fee request.").

---

[7] *E.g.,* Cornerstone Research, *Securities Class Action Settlements: 2016 Review and Analysis* at 7-8 (2017) ("2016 Cornerstone Report," Dec. Ex. 6) (in securities class actions with less than $50 million in estimated damages, the median settlement in 2016 was for 7.3% of the estimated damages, and for all estimated damages levels, the total sample were for 2.5% of estimated damages).

The standing and prior experience of Lead Counsel is also relevant in determining fair compensation.  *See, e.g., Grinnell*, 495 F.2d at 470; *Eltman v. Grandma Lee's, Inc.*, No. 82 Civ. 1912, 1986 WL 53400, at \*4, 1986 U.S. Dist. LEXIS 24902, at \*24 (E.D.N.Y. May 28, 1986). Here, Lead Plaintiffs and the Settlement Class are represented by Pomerantz and Rosen Law.  As their firm resumes demonstrate,[8] both Pomerantz and Rosen Law have extensive experience in the specialized field of securities litigation.[9]   They leveraged this experience and resources to thoroughly evaluate the merits and value of the Action and successfully negotiate the Settlement.

In addition, the Settling Defendants were ably represented by experienced and qualified attorneys at Axinn Veltrop & Harkrider LLP and Feuerstein Kulick LLP.  The standing of opposing counsel underscores the complexity of the litigation and the challenges overcome by Lead Counsel.  *See BioScrip*, 2017 U.S. Dist. LEXIS 118881, at \*73-74; *Flag Telecom*, 2010 WL 4537550, 2010 U.S. Dist. LEXIS 119702, at \*83; *Warner Commc'ns*, 618 F. Supp. at 749.  The fact that Lead Counsel achieved the Settlement for the Settlement Class Members in the face of high-quality legal opposition further evidences the quality of Lead Counsel's efforts.

### d.     The Requested Fee in relation to the Settlement is Fair, Reasonable, and Wholly Consistent with Case Law.

A fee is intended to approximate what counsel would receive when bargaining in the marketplace.  *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).  In the marketplace, the customary fee arrangement in individual contingent-fee cases is between 30% and 40% of the recovery.  *See Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).  Academic research further confirms the reasonableness of a fee of one-third of the recovery in securities class actions: in cases settling for

---

[8] The resumes of Pomerantz and Rosen Law are submitted as Pomerantz Dec., Ex. A, and Rosen Law Dec., Ex. A.

[9] *See, e.g.*, *In re Montage Tech. Grp. Ltd. Sec. Litig.*, No. 14-cv-722 (SI) (N.D. Cal.); *In re Lihua Int'l, Inc. Sec. Litig.*, No. 14-CV-5037 (RA) (S.D.N.Y.); *Lewy v. Skypeople Fruit Juice, Inc.*, No. 11-cv-2700 (PKC) (S.D.N.Y.); *Perry v. Duoyuan Printing, Inc.*, No. 10 Civ. 07235 (GBD) (S.D.N.Y.); *Munoz v. China Expert Tech., Inc.*, No. 07-CV-10531 (S.D.N.Y.); *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 362 (S.D.N.Y. 2016).

less than $5 million, the median fee award was 33.3% in 1996–2010 and 30% in 2011–2015.  *See* Svetlana Starykh & Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review* at 36 (Jan. 25, 2016), http://www.nera.com/content/dam/nera/publications/2016/2015_Securities_Trends_Report_NERA.pdf; *see also* 2016 NERA Report at 39 (Dec. Ex. 7) (between 1996 and 2011, for securities class-action settlements less than $5,000,000, the median plaintiffs' attorneys' fee award was 33.3% of the settlement, and between 2012 and 2016, the median plaintiffs' attorneys' fee award was 30%).

Lead Counsel's fee request of one-third (or $333,333.33) of the $1,000,000 is fair, reasonable, and wholly consistent with the range of percentages that the Second Circuit and Southern District of New York have awarded in class-action settlements.  *See, e.g.*, *Silverberg v. People's Bank*, 23 F. App'x 46, 47-49 (2d Cir. 2001) (affirming award of nearly 33%); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (approving 33% fee); *Strougo*, 258 F. Supp. 2d at 262 (awarding 33.3% of $1.5 million settlement and collecting cases); *Maley*, 186 F. Supp. 2d at 368 (awarding 33.3% of $11.5 million settlement); *In re Amaranth Natural Gas Commodities Litig.*, No. 07 Civ. 6377 (SAS), 2012 WL 2149094, 2012 U.S. Dist. LEXIS 82599, at *9 (S.D.N.Y. June 8, 2012) (awarding 30%, or $23,130,000, for reaching "reasonable" but "by no means extraordinary" settlement); *Fogarazzo v. Lehman Bros.*, No. 03 Civ. 5194 (SAS), 2011 WL 671745, 2011 U.S. Dist. LEXIS 17747, at *10-11 (S.D.N.Y. Feb. 23, 2011) (awarding 33.3% of $6.75 million settlement); *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852, 2010 U.S. Dist. LEXIS 125945, at *59-60 (S.D.N.Y. Nov. 30, 2010) (collecting cases for the proposition that "courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater"); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 WL 5851465, 2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding over 30% and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *In re Van Der Moolen Holding N.V. Sec. Litig.*, No. 03-CV-8284 (RWS), 2006 U.S.

Dist. LEXIS 98433, at *6 (S.D.N.Y. Dec. 6, 2006) (awarding 33.3% of $8 million settlement); *In re Blech Sec. Litig.*, No. 94 Civ. 7696 (RWS), 2002 WL 31720381, 2002 U.S. Dist. LEXIS 23170 (S.D.N.Y. Nov. 27, 2002) (awarding one third of $2,795,000 settlement fund); *Berchin v. Gen. Dynamics Corp.*, No. 93 Civ. 1325 (JSM), 1996 WL 465752, 1996 U.S. Dist. LEXIS 11777, at *4 (S.D.N.Y. Aug. 13, 1996) (awarding one-third of first $3 million).[10]

### e.   Private Securities Suits Are an "Essential Supplement" to Criminal Prosecution and Civil Enforcement.

The Supreme Court has emphasized that private securities actions are "a most effective weapon in the enforcement of the securities laws" and "a necessary supplement to [SEC] action." *Bateman*, 472 U.S. at 310.  "Congress, the Executive Branch, and [the Supreme] Court, moreover, have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions […].'"  *Amgen*, 568 U.S. at 478.  The meritorious private actions that the Supreme Court referred to are largely class actions: the case that *Amgen* quoted, *Tellabs*[11], and the two cases that *Tellabs* relied upon for the proposition quoted in *Amgen* were all securities class actions.[12]

---

[10] The same is true in other courts.  *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million"); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, 2010 U.S. Dist. LEXIS 4067, at *22 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (awarding one-third fee of $7.8 million, which was "well within the range accepted by courts in this circuit"); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05-CV-720 S, 2008 WL 7630102, 2008 U.S. Dist. LEXIS 53872, at *10 (W.D.N.Y. June 28, 2008) (awarding 33% of fund, finding it "typical in class action settlements in the Second Circuit"); *Collins v. Olin Corp.*, No. 03-cv-945 (CFD), 2010 WL 1677764, 2010 U.S. Dist. LEXIS 39862, at *24 (D. Conn. Apr. 21, 2010) (awarding one-third of settlement fund); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT (RCx), 2005 WL 1594403, 2005 U.S. Dist. LEXIS 13555, at *63 (C.D. Cal. June 10, 2005) (awarding 33.3% of $27.78 million settlement); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 498 (E.D. Pa. 2003) (awarding 33.3% of $7 million settlement); *In re E. W. Blanch Holdings, Inc. Sec. Litig.*, No. 01-258 (JNE/JGL), 2003 WL 23335319, 2003 U.S. Dist. LEXIS 26402, at *10 (D. Minn. June 16, 2003) (awarding 33.3% of $20 million settlement); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (noting that in a study of 289 settlements ranging from less than $1 million to $50 million, "the median turns out to be one-third").

[11] *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

[12] *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005); *J. I. Case Co. v. Borak*, 377 U.S. 426, 427 (1964).

"Courts have, as a generic matter, frequently observed that 'the public policy of vigorously enforcing the federal securities laws must be considered' in calculating an award." *BioScrip*, 2017 U.S. Dist. LEXIS 118881, at \*75 (quoting *Maley*, 186 F. Supp. 2d at 373). Public policy favors granting counsel fees sufficient to reward and encourage them to bring securities class actions. *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."). "[P]ublic policy supports granting attorneys fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC." *In re Bristol-Myers*, 361 F. Supp. 2d 229, 236 (S.D.N.Y. 2005); *see also Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered.")

The "essential supplement" of private securities enforcement depends on adequate common-fund attorneys' fee awards. Here, the fee of $333,333.33, plus accrued interest, is consistent with the policy to incentivize well-qualified plaintiffs' counsel to prosecute federal-securities-law actions.

### 2. The Requested Fee is Reasonable Under the Lodestar Cross-Check.

The Court may also consider whether the fee determined under the percentage method is consistent with a fee that would result under the lodestar-multiplier method. *AOL Time Warner*, 2006 WL 3057232, 2006 U.S. Dist. LEXIS 77926, at \*6-7 (describing this second analysis); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 85 (E.D.N.Y. 2002). The lodestar-multiplier method involves calculating the product of the number of hours worked and counsel's hourly rates—the "lodestar"—and adjusting the lodestar for contingency, risk, and other factors by applying a "multiplier" to the lodestar. *Grinnell*, 495 F.2d at 470-71. The Second Circuit has encouraged the practice of performing a lodestar "cross-check" on the reasonableness of a fee award based on the percentage-of-recovery method, but when doing so, the hours documented "need not be exhaustively scrutinized." *Goldberger*, 209 F.3d at 50 (encouraging "the practice of requiring

documentation of hours as a 'cross check' on the reasonableness of the requested percentage" and noting that "where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court"); *see also BioScrip*, 2017 U.S. Dist. LEXIS 118881, at *57.

As set forth in the Pomerantz Dec. and Rosen Law Dec., Lead Counsel expended 284.93 hours for a total lodestar of $165,094.25 in litigating this Action.[13]  This multiplier is consistent with the range of lodestar multipliers approved by courts in the Second Circuit, which further demonstrates the reasonableness of the requested fee.  Indeed, lodestar multipliers of nearly five have even been deemed common by courts in this District.  *See, e.g.*, *Colgate-Palmolive*, 36 F. Supp. 3d at 347, 353 (awarding attorney's fees representing a 5.2 multiplier); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts"); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (multiplier of 5.5); *EVCI Career Colleges*, No. 05-cv-10240 (CM), 2007 WL 2230177, at *17, 2007 U.S. Dist. 57918 (compiling cases); *see generally* 1 Alba Conte, Attorney Fee Awards §2.06, at 39 (2d ed. 1993) ("When a large common fund has been recovered and the hours are relatively small, some courts reach a reasonable fee determination based on large multiples of 5 or 10 times the lodestar.").[14]

---

[13]  In computing the lodestar, the hourly billing rate to be applied is the "market rate"—the hourly rate that is normally charged in the community where counsel practices.  *See, e.g., Blum*, 465 U.S. at 895; *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983) ("market standards should prevail"); *In re Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price.  It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order," holding that district court committed legal error in placing "a ceiling of $175 on the hourly rates of all lawyers for the class, including lawyers whose regular billing rates were almost twice as high"); *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973) ("value of an attorney's time generally is reflected in his normal billing rate").

[14]  *See also, Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (awarding fees reflecting a multiplier of 5.3, noting that it was "not atypical for similar fee-award cases"); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal. 2008) (multiplier of 5.2); *In re Charter Communications, Inc., Sec. Litig.*, No. 02-CV-1186, , 2005 WL 4045741, at *18, 2005 U.S. Dist. LEXIS 14772, at *56 (E.D. Mo. June 30, 2005) (multiplier of 5.61); *DiGiacomo v. Plains All American Pipeline*, No. Civ.A.H-99-4137, , 2001 WL 34633373, at *11, 2001 U.S. Dist. LEXIS 25532, at *32  (S.D. Tex. Dec. 19, 2001) (multiplier of 5.3).

A high multiplier is especially appropriate in cases where, such as here, the parties reached a "relatively quick settlement" before engaging in extensive discovery.  *See, e.g.*, *Maley*, 186 F. Supp. 2d at 363–64, 373 (awarding fees reflecting a multiplier of 4.65 in a case that settled after one year of litigation, noting that "in the context of a complex class action, early settlement has far reaching benefits in the judicial system"); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (approving multiplier of 3.47 when counsel achieved an early settlement).

Moreover, Lead Counsel's legal work will not end with the Court's approval of the Settlement.  Additional hours and resources will necessarily be expended assisting Settlement Class Members with their Proofs of Claim, shepherding the claims process, and responding to Settlement Class Members' inquiries.  *See BioScrip*, 2017 U.S. Dist. LEXIS 118881, at *60 (considering lead counsel's work that remained to be done after order); *Aponte v. Comprehensive Health Mgmt.*, No. 10 Civ. 4825, 2013 WL 1364147, 2013 U.S. Dist. LEXIS 47637, at *18 (S.D.N.Y. Apr. 2, 2013) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request.").

Accordingly, the time and effort devoted to this case by Lead Counsel to obtain the $1,000,000 recovery confirms that the requested fee is thus reasonable, whether calculated as a percentage of the fund or in relation to Lead Plaintiffs' counsel's lodestar.

### 3.      Lead Counsel Should Be Reimbursed for $13,107.67 in Litigation Expenses, Which Is Below the Already-Requested $30,000 Limit.

"In connection with settlement of a class action, counsel's reasonable out-of-pocket expenses are properly awarded."  *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 363 (E.D.N.Y. 2010).  "Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course."  *In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011).  While expense awards are reviewable only for abuse of discretion, a district court must "explain the basis for its award of costs, if the amount awarded is less than that requested by plaintiffs' counsel."  *Munter v. Hickey (In re CRM Holdings, Ltd. Secs. Litig.)*, 634 Fed. Appx. 59,

20

61 (2d Cir. 2016).   Courts routinely hold that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses that would have been reimbursed by a paying client.  *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 132, 143 (S.D.N.Y. 2008); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable out-of-pocket expenses necessary for the representation of the class); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993); *Flag Telecom*, 2010 WL 4537550, at *30, 2010 U.S. Dist. LEXIS 119702, at *86 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class").

Lead Counsel respectfully requests that in addition to awarding them reasonable attorneys' fees, the Court grant their request for reimbursement of $13,107.67 in litigation expenses incurred or expected to be incurred in connection prosecuting this Action.  *See* Dec. ¶¶90-92.  The relatively significant expenses included expert fees of $10,093.00 and are further itemized in detail in Lead Counsel's accompanying Declarations—Lead Counsel did not duplicate expenses across the firms.  *See* Dec. Exs. 1 (Pomerantz Dec.) and 2 (Rosen Law Dec).  These expenses were reasonable and necessary to Lead Plaintiffs' success in achieving the Settlement.  *See Metlife*, 689 F. Supp. 2d at 364 (reimbursing "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses"); *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 272 n. 8 (S.D.N.Y. 2012) (reimbursing over $1 million in expert expenses to plaintiff's counsel).

Not a single objection to the expense request has been received, and the amount requested is below the $30,000 limit disclosed in the Notice.  *See* Dec. Ex. 3 (Evans Dec.) at ¶13 & Ex. A. Accordingly, Lead Counsel respectfully request payment for these expenses.

**B.     The Proposed Lead Plaintiffs' Awards Are Reasonable.**

The PSLRA permits Lead Plaintiffs to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class[]."  15 U.S.C. §78u-4(a)(4).  "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place."  *In re Giant Interactive Grp., Inc*., 279 F.R.D. 151, 165 (S.D.N.Y. 2011); *see also Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 958–59 (9th Cir. 2009) (incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general"); *In re Gilat Satellite Networks, Ltd.,* No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *19, 2007 U.S. Dist. LEXIS 68964, at *62 (E.D.N.Y. Sept. 18, 2007) (granting PSLRA awards where "the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks and rates appear reasonable to the furtherance of the litigation").

Here, Lead Plaintiffs at all times adequately represented the Settlement Class and should receive $1,000 each ($2,000 in total) for their efforts.  Messrs. Tran and Ybarra reviewed filings, conferred with counsel about litigation and settlement strategies, and provided authorization to Lead Counsel for the range to be sought in the settlement negotiations.  *See* Dec. Ex. 4 (Mr. Tran's Dec.) and Ex. 5 (Mr. Ybarra's Dec.).  They each devoted time and effort reviewing case filings and other key documents initially drafted by Lead Counsel, corresponding with counsel about the Action, and in other ways to help advance the Action.  *See* Dec. Ex. 4 (Mr. Tran's Dec.) and Ex. 5 (Mr. Ybarra's Dec.).

Lead Counsel respectfully submits that the relatively modest request of a $1,000 award to each of the Lead Plaintiffs to compensate them for their time and service to the Settlement Class, as well as to function as incentives to serve as lead plaintiffs, is reasonable in this Action, especially when compared to relatively significant lead plaintiffs' awards routinely ordered by courts.  *See,*

*e.g.*, *In re Silvercorp Metals, Inc. Sec. Litig.*, No. 12-cv-9456, slip op. at 9 (S.D.N.Y. Feb. 13, 2014) (awarding $12,500 to each lead plaintiff for "reasonable costs and expenses relating to the representation of the Class."); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144, 2009 WL 5178546, at *21, 2009 U.S. Dist. LEXIS 120953, at *6 n.1, *62 (S.D.N.Y. Dec. 23, 2009) (awarding over $200,000 to lead plaintiffs to compensate them "for their reasonable costs and expenses incurred in managing this litigation and representing the Class" and noting that these efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives"); *In re Monster Worldwide, Inc. Sec. Litig.,* No. 07-cv-02237 (JSR), 2008 WL 9019514, at *2 (S.D.N.Y. Nov. 25, 2008) (awarding lead plaintiff $7,303 for reasonable costs and expenses directly relating to the representation of the class); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (awarding $100,000 to eight lead plaintiffs who "communicated with counsel throughout the litigation, reviewed counsels' submissions, indicated a willingness to appear at trial, and were kept informed of the settlement negotiations, all to effectuate the policies underlying the federal securities laws"); *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.,* No. CIV.A. 08-11064-NMG, 2012 WL 6184269, at *2, 2012 U.S. Dist. LEXIS 174711, at *7-8  (D. Mass. Dec. 10, 2012) (awarding $54,626 to institutional lead plaintiffs who had "worked closely with counsel throughout the case, communicated with counsel on a regular basis, reviewed and provided input with respect to counsel's submissions, provided information, produced documents, and participated in settlement discussions").

The requested award is also appropriate in light of "the relationship between the requested incentive award and the amounts recovered by absent class members under the settlement." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 370 (E.D.N.Y. 2010); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, 2008 U.S. Dist. LEXIS 58106, at *57 (S.D.N.Y. July 31, 2008) ($3,000 award out of $1.2 million settlement); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757793, 2005 U.S. Dist. LEXIS 24890, at **7, 30-31 (S.D.N.Y. Oct. 19, 2005) ($7,500 award out of $10 million settlement).

23

III.     CONCLUSION

For all of the foregoing reasons, Lead Counsel respectfully request that the Court grant their application for an award of attorneys' fees and reimbursement of reasonable litigation expenses and awards to the Lead Plaintiffs.

Dated:  November 3, 2017                     Respectfully submitted,

                                            **POMERANTZ LLP**

                                            */s/ Jeremy A. Lieberman*
                                            Jeremy A. Lieberman
                                            Justin S. Nematzadeh
                                            Joseph A. Hood, II
                                            600 Third Avenue, 20th Floor
                                            New York, New York 10016
                                            Telephone: (212) 661-1100

                                            **POMERANTZ LLP**
                                            Patrick V. Dahlstrom
                                            Ten South LaSalle Street, Suite 3505
                                            Chicago, Illinois 60603
                                            Telephone: (312) 377-1181

                                            **THE ROSEN LAW FIRM P.A.**
                                            Laurence Rosen
                                            Phillip Kim
                                            Kevin Chan
                                            275 Madison Avenue, 34th floor
                                            New York, New York 10016
                                            Telephone: (212) 686-1060

                                            *Co-Lead Counsel for Lead Plaintiffs and the Class*

                                            **GOLDBERG LAW PC**
                                            Michael Goldberg
                                            Brian Schall
                                            1999 Avenue of the Stars, Suite 1100
                                            Los Angeles, California 90067
                                            Tel: (800) 977-7401

                                            *Additional Counsel for Lead Plaintiffs*