# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT SPRINGER, et al., individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>CODE REBEL CORPORATION, et al.,<br><br>　　　　　　　　Defendants. | Case No. 16-cv-3492 (AJN) |

**JOINT DECLARATION OF JEREMY A. LIEBERMAN AND PHILLIP KIM IN SUPPORT OF (1) LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND (2) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, <u>REIMBURSEMENT OF EXPENSES, AND AWARDS TO LEAD PLAINTIFFS</u>**

**TABLE OF CONTENTS**

I.    SUMMARY OF LEAD PLAINTIFFS' CLAIMS AND PROCEDURE HISTORY......... 6

II.   SETTLEMENT ....................................................................................................... 11

      A.    Settlement Negotiations .................................................................... 11

      B.    Reasons for the Settlement................................................................ 12

      C.    Settlement Terms ............................................................................... 15

III.  THE COURT'S PRELIMINARY APPROVAL ORDER AND LEAD
      PLAINTIFFS' DISSEMINATION OF NOTICE ............................................. 16

      A.    Preliminary Approval Order .............................................................. 16

      B.    Notice ................................................................................................ 17

      C.    Reaction of the Class ........................................................................ 19

      D.    The Plan of Allocation Should be Approved as it is Fair and Reasonable ........... 19

IV.   LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS'
      FEES AND REIMBURSMENT OF EXPENSES ........................................... 23

      A.    Attorneys' Fees ................................................................................. 23

      B.    Costs and Expenses ........................................................................... 27

V.    AN AWARD TO LEAD PLAINTIFFS IS WARRANTED ........................... 27

VI.   CASES AND OTHER CITED AUTHORITY ............................................... 28

We, Jeremy A. Lieberman and Phillip Kim, declare and state, under penalty of perjury, that the following is true and correct to the best of my knowledge, information, and belief:

1.      Mr. Lieberman is a co-managing partner of the firm Pomerantz LLP ("Pomerantz") and Mr. Kim is a partner at the The Rosen Law Firm, P.A. ("Rosen Law"). Together, Pomerantz and Rosen Law are the court-appointed co-Lead Counsel ("Lead Counsel") on behalf of co-lead plaintiffs William Tran and Adrian Ybarra (together, "Lead Plaintiffs") in the class action styled as *Springer, et al.,* v. *Code Rebel Corp., et al.*, 1:16-cv-03492 (AJN) (S.D.N.Y.) (the "Action").[1] We are duly admitted to practice in New York and before this Court.  We have personal knowledge of the matters set forth herein and, if called upon, could and would completely testify thereto.

2.      We respectfully submit this Declaration ("Dec." or "Declaration") in support of the following: (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Lead Plaintiffs, both filed concurrently herewith.  The terms of the Settlement are set forth in the Settlement Agreement of Release, dated May 15, 2017 ("Agreement").  (Docket ("Dkt.") No. 60).[2]  The Court preliminarily approved the Agreement by its Order Preliminarily Approving Proposed Settlement, filed on June 28, 2017 ("Preliminary Approval Order") (Dkt. No. 71).

3.      Pomerantz has litigated securities fraud cases for approximately eighty years and set important precedents. Courts routinely acknowledge Pomerantz's securities litigation strengths. *See, e.g.*, *Stengle v. Am. Italian Pasta Co.*, No. 05-cv-725, 2005 U.S. Dist. LEXIS 43816,

---

[1] All capitalized terms not otherwise defined herein have the meanings provided in the Settlement Agreement of Release, dated May 15, 2017.  (Docket No. 60).

[2] All "Dkt." references herein are to the *Springer, et al.,* v. *Code Rebel Corp., et al.*, 1:16-cv-03492 (AJN) (S.D.N.Y.), docket.

at *27 (W.D. Mo. Dec. 19, 2005); *In re Groupon, Inc. Sec. Litig.*, No. 12 C 2450, 2012 WL 3779311, at *5 (N.D. Ill. Aug. 28, 2012).  The National Law Journal named Pomerantz to the 2013 Plaintiffs' Hot List Hall of Fame for its work representing plaintiffs in securities litigation.  Further details about Pomerantz and its attorneys is attached as Exhibit ("Ex.") A to the Declaration of Jeremy A. Lieberman on Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Pomerantz Dec."), which is Ex. 1 to this Declaration.

4.      Courts have recognized Rosen Law's experience in complex litigation and, in particular, securities litigation. *Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11 Civ. 2700 (PKC), Hearing Tr. at 25 (S.D.N.Y. Jan. 17, 2014) ("Plaintiffs' counsel is to be commended for bringing about this favorable result, and in a case where the defendants were effectively and zealously and professionally represented by the law firm of Winston & Strawn"); *In re CBD Energy Limited*, 4:15-CV-01668 (GHM), Hearing Tr. at 15 (S.D. Tex. July 27, 2017) ("I want to commend the lawyers…I thought it was very well lawyered on all sides. Very well. Very well done.").  Since 2014, Rosen Law has been ranked number two in the nation by Institutional Shareholder Services for the number of securities class action settlements annually obtained for investors.  Further details about Rosen Law and its attorneys is attached as Exhibit ("Ex.") A to the Declaration of Philip Kim on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Law Dec."), which is Ex. 2 to this Declaration.

5.      This Declaration sets forth the nature of the claims asserted, the Action's procedural history, and the methods by which the Settlement Class was notified of the Settlement.  It also demonstrates the reasons why the Settlement and Plan of Allocation are fair, reasonable, and adequate, and why co-Lead Counsel's application for attorneys' fees, reimbursement of expenses, and awards for co-Lead Plaintiffs should be approved.  The work performed by co-Lead Counsel

throughout the litigation is described herein in order to demonstrate that the litigation was vigorously prosecuted and that the settlement was negotiated at arm's length by experienced and fully informed counsel.  This Declaration also explains the basis for our damages estimates and the Plan of Allocation, both of which were based on consultations with experts in financial economics and securities litigation.

6.      The settlement contemplated by the Agreement ("Settlement") provides for a payment of one-million, three-hundred-thousand U.S. dollars ($1,300,000) in cash ("Settlement Amount") in exchange for the release of all claims asserted by Lead Plaintiffs against Reid Dabney, Arben Kryeziu n/k/a Arben Kane, David Dwelle, James Canton, and Volodymyr Bykov (collectively, "Settling Defendants") and completely resolves this Action and any of the Trustee (defined below).  Of the Settlement Amount, one-million U.S. dollars ($1,000,000) will be allocated as gross proceeds to settle any claims against the Settling Defendants in this Action, along with claims brought in the following actions: *Healy* v. *Kryeziu et al.,* Superior Court of California Los Angeles County, No. BC624918 ("*Healv* Action"), *Torres v. Kryeziu et al.,* Superior Court of California Los Angeles County, No. BC629838 ("*Torres* Action," collectively with the *Healy* Action, the "California Actions" and collectively with this Action, the "Securities Class Actions").  Of the Settlement amount, the remaining three-hundred-thousand U.S. dollars ($300,000) will be allocated as gross proceeds to settle any claims against the Settling Defendants that can be brought in connection with Code Rebel Corporation ("Code Rebel") voluntary petition seeking bankruptcy protection under Chapter 7 of Title 11 of the United States Bankruptcy Code ("Chapter 7") in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"), *In re Code Rebel Corporation*, No. 16-11236 ("Code Rebel Bankruptcy Proceeding").

The Bankruptcy Court appointed Jeoffrey L. Burtch as the Chapter 7 Trustee for the Code Rebel Bankruptcy Proceeding ("Trustee").

7.      While Lead Counsel believes that the allegations in the [Corrected] Amended Class Action Complaint for Violations of the Federal Securities Laws filed on June 27, 2017 in this Action (Dkt. No. 63) ("Complaint" or "AC") have substantial merit, Lead Counsel respectfully submits that the Settlement represents an excellent result for the Settlement Class.

8.      The Settlement is the result of extensive arm's-length settlement negotiations among esteemed and experienced counsel.  Through several settlement discussions and numerous telephonic conferences spanning several months, counsel for the Settling Defendants, the Trustee, and the Plaintiffs (the "Agreement Parties") vigorously debated the strengths and weaknesses of the claims and defenses in this Action.  Lead Counsel's ability to reach a compromise in light of the many complex issues present in this Action evidences the skill of representation and the quality of the results.

9.      Before drafting the Amended Complaint, Lead Counsel conducted an extensive investigation into the factual background and legal underpinnings of this Action, including the following, without limitation: an exhaustive review of Code Rebel's filings with the U.S. Securities and Exchange Commission ("SEC") and public disclosures and of public information from other sources about Code Rebel and its senior management, including, without limitation, press releases, investor-conference-call transcripts and commentary, research reports, news articles, media coverage, and analyst commentary; and analyses of damages scenarios, with the assistance of a consulting expert.  Through this detailed investigation, Lead Counsel garnered a thorough understanding of the issues and complexities of the Action.  Lead Counsel also conducted

an exhaustive analysis of applicable Second Circuit case law and consulted with an expert in the fields of loss causation and damages.

10.     Lead Counsel also worked closely with expert economists to examine damages scenarios and the implications for the potential recovery available to Settlement Class Members. The $1,000,000 portion of the Settlement Amount represents approximately 16.67% of Lead Counsel's best estimate for total damages, which is six-million U.S. dollars ($6,000,000) spread across 2.9 million shares.

11.     Pursuant to the Court's Order Preliminarily Approving Proposed Settlement of the Action (Dkt. No. 71) ("Court's Preliminary Approval Order"), the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and Proof of Claim and Release Form (the "Claim Form") (collectively, the "Notice and Claim Form") were mailed to 5,207 potential Settlement Class Members and letters were mailed or emailed to 1,472 potential nominees.  The Notice and Claim Form were also posted online at www.strategicclaims.net.  The publication notice was posted electronically on *Globe Newswire* and in print once in *Investor's Business Daily* on July 31, 2017.  (*See* Ex. C of the Declaration of Sarah Evans Concerning the Mailing of Notice, Publication of Summary Notice, Exclusion Requests Received, and Objections Submitted, dated November 3, 2017 at ¶¶6, 10 ("Evans Dec."), which is submitted as Ex. 3 to this Declaration).  To date, no one has requested to be excluded from the Settlement Class nor submitted an objection to the Settlement.  Dec. Ex. 3 (Evans Dec.) at ¶¶12 and 13.

12.     The Settlement provides an immediate and certain benefit to the Settlement Class, considering the significant risks that a smaller recovery—or, indeed, no recovery—might be achieved after a trial and the likely appeals that would follow, which could prolong the Action for years.  For these reasons and those set forth more fully below, Lead Counsel respectfully submits

that the Settlement is in the best interests of the Settlement Class and should be approved as fair, adequate, and reasonable.

13.     Lead Counsel also respectfully requests that the Court approve the Plan of Allocation for the Settlement proceeds, the award of attorneys' fees in the amount of $333,333.33, and reimbursement of expenses in the amount of $13,107.67 as fair and reasonable.  The fee award constitutes one-third (33 and 1/3%) of the $1,000,000 of the Settlement Amount allocated as gross proceeds to settle the Securities Class Actions, which is within the range of attorneys' fees awarded by courts within the Second Circuit and is reasonable in light of the relevant factors, including the quality of the representation, the complexity of the Action, and the Settlement Class' reaction to the fees request.  The expenses incurred were reasonable and necessary to prosecute this Action and to reach this favorable result for the Settlement Class.  Lead Counsel also respectfully requests awards of $1,000 to each of Messrs. Tran and Ybarra ($2,000 in total) for their efforts in leading the prosecution of the Action.

## I.     SUMMARY OF LEAD PLAINTIFFS' CLAIMS AND PROCEDURE HISTORY

14.     Lead Plaintiffs' claims are set forth more fully in the Complaint (Dkt. No. 54-2). Lead Plaintiffs assert claims under and pursuant to §15 of the U.S. Securities Act of 1933 (15 U.S.C. §§77k and 77o) ("Securities Act"), §§10(b) and 20(a) of the U.S. Securities Exchange Act of 1934, (15 U.S.C. §78j(b) and 78t(a)) ("Exchange Act"), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).  The class period is from the date of Code Rebel's initial public stock offering on or about May 19, 2015, to May 12, 2017, inclusive ("Settlement Class Period").

15.     Defendant Code Rebel is a Delaware Corporation headquartered at 77 Ho'okele Street, Suite 102 Kahului, Hawaii.  Its wholly owned subsidiary, ThinOps Resources LLC ("ThinOps"), is based in Houston, Texas.  Code Rebel is a software and information technology services ("IT") company.  During the Settlement Class Period, the Company's stock traded on

NASDAQ under the symbol "CDRB."  Defendant Arben Kryeziu has been the Company's chairman and chief executive officer until his resignation on or about May 18, 2016.  Defendant Reid Dabney has been the Company's chief financial officer until his resignation on or about May 18, 2016.  Defendant David Dwelle has been a director of the Company until his resignation on or about May 18, 2016.  Defendant James Canton has been a director of the Company until his resignation on or about May 18, 2016.  Defendant Volodymyr Bykov has been a director of the Company and the Company's vice president and chief technology officer until his resignation on or about May 18, 2016.  The Company operates and reports in two business segments.  Its software segment provides end-user applications through the Code Rebel product line.  Its IT Services segment provides management and consulting services through ThinOps, which was acquired on July 31, 2015.

16.     The Complaint alleges that throughout the Settlement Class Period, Defendants made false and/or misleading statements and/or failed to disclose the following, without limitation: (1) Code Rebel's financial statements contained errors concerning its assets and financial condition; and (2) as a result of the foregoing, Code Rebel's public financial statements were materially false and misleading and/or lacked a reasonable basis at all relevant times.  When the true details entered the market, the Complaint alleges that investors suffered damages.

17.     On May 6, 2016, the SEC issued an order suspending the trading of Code Rebel's stock, stating, in part:

> It appears to the Securities and Exchange Commission that there is a lack of accurate information concerning the securities of Code Rebel Corporation ("CDRB") because of questions regarding the accuracy of statements in CDRB's Forms 10-Q for the quarters ended June 30, 2015 and September 30, 2015, and the Form 10-K for the year ending December 31, 2015, concerning the company's assets and financial condition.  CDRB is a Delaware corporation with its principal executive offices in Kahului, Hawaii. Its stock is listed on NASDAQ under the symbol CDRB.

The Commission is of the opinion that the public interest and the protection of investors require a suspension of trading in the securities of the above-listed company.

THEREFORE, IT IS ORDERED, pursuant to Section 12(k) of the Securities Exchange Act of 1934, that trading in the securities of the above-listed company is suspended for the period from 9:30 a.m. EDT on May 6, 2016, through 11:59 p.m. EDT on May 19, 2016.

18.     Defendants continue to deny that they committed any acts or omissions giving rise to any liability and/or violation of the law.

19.     This action was commenced on May 10, 2016 against Code Rebel, Arben Kryeziu, and Reid Dabney.  That same day, Rosen Law issued an early notice pursuant to the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, 15 U.S.C. §78u-4(f)(7) ("PSLRA"), advising class members of the allegations and claims in the Complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff, amongst other things.

20.     Putative class actions have been filed against the Settling Defendants alleging violations of Sections 11, 12(a)(2), and 15 of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10(b)( 5) promulgated thereunder, and Section 20(a) of Exchange Act ("Securities Claims"), all as set forth in the Complaint and the complaints filed in the *Healy* and *Torres* actions.

21.     On May 18, 2016, Code Rebel filed a voluntary petition seeking bankruptcy protection under Chapter 7 in the Bankruptcy Court, *In re Code Rebel Corporation*, No. 16-11236. The Bankruptcy Court appointed Jeoffrey L. Burtch as the Chapter 7 Trustee for the Code Rebel Bankruptcy Proceeding ("Trustee").

22.     On June 20, 2016, the Court ordered the plaintiffs and certain defendants to indicate whether the case should be stayed in light of the bankruptcy filing.  The plaintiffs argued that the automatic stay should not be extended to the Individual Defendants because the Second Circuit

has explained that "automatic stays pursuant to § 362(a) are generally limited to debtors and do not encompass non-bankrupt co-defendants." *Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir.1986).  The Defendants requested a temporary stay of the proceedings, and the appointed and acting Chapter 7 Trustee for the estate of Code Rebel supported such a temporary stay.  (ECF No. 40).

23.     On July 11, 2016, Lead Plaintiffs filed a Motion for Appointment as Lead Plaintiff and Approval of Counsel, stating that they had suffered financial losses of nearly $98,000 in connection with their purchases of the securities of Code Rebel between August 17, 2015 and May 5, 2016, both dates inclusive.  (Dkt. Nos. 23, 25.)

24.     That same day, three competing movants filed similar motions, but they all ultimately did not oppose Messrs. Tran and Ybarra's motions.  (*See* Dkt. Nos. 24, 26, 28-29, 31-32, 41, 43, 44, 46).

25.     By letter dated July 15, 2016, the Trustee has alleged that he intends to assert certain claims against the Settling Defendants on behalf of the Code Rebel bankruptcy estate, including, without limitation, alleging breaches of the duty of loyalty and/or care, breaches of fiduciary duty, neglect of duties, abdication of duties, errors, misstatements and/or materially inaccurate statements, lack of good faith, and omissions to act and/or state material facts known to Settling Defendants when such statements were necessary, and/or the failure to implement or otherwise follow adequate safeguards and controls (the "Trustee Claims").

26.     On September 16, 2016, Lead Plaintiffs requested that the Court issue an Order pursuant to Section 21D(a)(3)(B) of the Exchange Act, as amended by the PSLRA, to (1) appoint Movants as Lead Plaintiffs, (2) approve Lead Plaintiffs' selection of Pomerantz and Rosen Law as

Co-Lead Counsel, and (3) grant such other and further relief as the Court may deem just and proper.

27.     Beginning in October 2016, Lead Plaintiffs commenced settlement negotiations with Defendants and the Trustee, which continued over the course of several months.

28.     On or about January 10, 2017, Lead Plaintiffs, Defendants, and Trustee agreed to settle and resolve the Trustee Claims and the Securities Class Actions.

29.     The Settling Defendants, the Trustee, and the Plaintiffs (Norman Healy and George Torres, who are the California plaintiffs, and Lead Plaintiffs Adrian Ybarra and William Tran) entered into a Memorandum of Understanding dated January 13, 2017, memorializing the terms of their agreement in principle in order to facilitate the negotiation and execution of Settlement.

30.     On March 2, 2017, the Court issued a Memorandum and Order, granting Messrs. Tran and Ybarra's motion for appointment as lead plaintiffs and deferring to the Bankruptcy Court to decide, in the first instance, the appropriateness of staying the Action against the individual Defendants (Dkt. No. 53).

31.     On June 13, 2017, Lead Plaintiffs, through Lead Counsel, informed the Court about the Settlement, amongst other things (Dkt. No. 54).

32.     On June 26, 2017, Lead Plaintiffs filed their motion for preliminary approval of the Settlement and related papers (Dkt. Nos. 60-62).

33.     On June 27, 2017, the Amended Complaint was filed (Dkt. No. 63).

34.     On June 28, 2017, the Court filed the Preliminary Approval Order (Dkt. No. 71).

## II.     SETTLEMENT

### A.     Settlement Negotiations

35.     From the outset, Lead Counsel tirelessly navigated the complicated issues in this Action.  During the course of the litigation, Lead Counsel accomplished the following, without limitation: moved for lead-plaintiff appointment on behalf of Lead Plaintiffs William Tran and Adrian Ybarra, which entailed researching securities laws, the alleged fraudulent scheme, and Lead Plaintiffs' damages, amongst other things; conducted an extensive investigation into the alleged fraudulent scheme to plead an initial and amended complaint and drafted an initial and amended complaint; prepared, reviewed, and commented upon documents to preserve Lead Plaintiffs and the Settlement Class' rights in connection with Code Rebel Corporation's voluntary petition in the United States Bankruptcy Court for the District of Delaware under Chapter 7, *In re Code Rebel Corporation*, No. 16-11236; consulted with a damages expert to analyze the amount of damages recoverable from Defendants on behalf of the Settlement Class; participated in several telephonic settlement conferences and correspondence related thereto on Lead Plaintiffs' behalf with the Settling Defendants and the Chapter 7 Trustee for the Code Rebel Bankruptcy Proceeding; negotiated the contours of agreements with several parties and their counsel; and drafted the terms of relevant settlement-related documents, including, without limitation, the Agreement filed in this Action (Docket No. 60), Lead Plaintiffs' Motion for Preliminary Approval of Proposed Settlement, For Approval of the Form and Manner of Notice, and to Schedule a Hearing on Final Approval of the Settlement and on Plaintiffs' Counsel's Application for an Award of Attorneys' Fees and Expenses, and Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and the documents related to the motion.[3]

---

[3] All capitalized terms not otherwise defined herein have the meanings provided in the Agreement.

36.     With the benefit of this extensive investigation and comprehensive analysis of the factual and legal issues in this Action, all Agreement Parties entered settlement negotiations well-informed.

37.     The Settlement is the result of extensive arm's-length settlement negotiations among esteemed and experienced counsel.  Through several settlement discussions and numerous telephonic conferences spanning several months, counsel for the Agreement Parties vigorously debated the strengths and weaknesses of the claims and defenses in this Action.  The Settlement Defendants denied liability, and Lead Counsel clearly expressed their intention to continue to litigate the Action rather than accept a settlement offer that was not in the Settlement Class' best interest.

38.     Through the course of telephonic conferences, the Settling Parties reached an agreement in principle to settle the claims against the Settlement Defendants.  The parties worked to finalize the terms of the Agreement.

39.     Defendants continue to deny the claims alleged in the Complaint.

**B.      Reasons for the Settlement**

40.     Although Lead Plaintiffs and Lead Counsel strongly believe that the claims asserted in this Action are meritorious and that the evidence will support them, they recognize and acknowledge the substantial expense and duration of continued proceedings that would be necessary to prosecute the Action.  Lead Plaintiffs and Lead Counsel are also mindful of the inherent difficulty of proving claims under the federal securities laws and the possible defenses to the claims asserted in this Action, as well as the uncertainties presented by complex litigation.

41.     Without the Settlement, Lead Plaintiffs would face a great deal of difficulty, expense, and delay in obtaining and reviewing necessary documents and taking depositions in this Action.  An added hurdle will be Defendants' potential defenses to discovery that they do not have

possession, custody, nor control of key documents; instead, they could argue that the Trustee has custody over, possession, or control of the documents.  The Trustee could object to discovery requests and argue that this Action should be stayed pending the Code Rebel Bankruptcy Proceedings.  Indeed, the Settling Parties have already engaged in briefing over whether this Action should be stayed while the Code Rebel Bankruptcy Proceedings progress.  (Dkt. Nos. 35-40, 45).

42.     Even if Lead Plaintiffs were able to obtain the necessary discovery, Defendants made clear their intention to defend this case and file motion-to-dismiss and summary-judgment motions.  This would have necessitated further motion practice and needlessly prolong the Action.

43.     Assuming that Lead Plaintiffs' claims survived Defendants' potential motion-to-dismiss and summary-judgment motions and the Court granted Lead Plaintiffs' potential class-certification motion, the case would proceed to trial, which would take more time, required substantial further expense, and consumed valuable court resources.  While Lead Plaintiffs are prepared to prove the complex factual and legal issues in this Action at trial, there is a substantial risk that the jury would not agree with their theory of the case.

44.     While Lead Plaintiffs are confident that a class would be certified, the class would face the risk of Defendants' arguments regarding potential factual dissimilarities of claims asserted by Lead Plaintiffs and putative class members.  If successful, the defenses would mandate individual lawsuits, hoping to collect minimal amounts of damages accrued.  Even if a class is certified over Defendants' arguments, it would face multiple risks in proving the class-wide nature of Defendants' securities laws violations at trial.

45.     Lead Plaintiffs would argue for the application of two different class-wide reliance presumptions.  First, under the *Affiliated Ute* presumption, "if there is an omission of a material

fact by one with a duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 159 (2008) (citing *Affiliated Ute of Utah v. United States*, 406 U.S. 128 (1972)). This presumption applies only to claims "involving primarily a failure to disclose." *Affiliated Ute*, 406 U.S. at 153. Lead Plaintiffs and Defendants would likely disagree as to whether this Action primarily involves misrepresentations or omissions. Second, Lead Plaintiffs would argue that the fraud-on-the-market ("FOM") reliance presumption under *Basic Inc. v. Levinson*, 485 U.S. 224, 241-47 (1988), applies. Defendants, would likely argue that this presumption does not apply because Code Rebel stock did not trade in an efficient market and there was no price impact from the alleged materially false and misleading statements, amongst other reasons.

46.     Further, it is well established that loss causation is a very complicated issue, often requiring testimony from financial experts. This essential element is often reduced to a "battle of the experts." Defendants will likely advance the position that depending on the control period used and the extent that damage to the class was not caused by the alleged curative disclosure(s) but instead by consequences unrelated to the fraud, there was no loss causation nor damages. A jury's reaction to conflicting expert testimony is unpredictable, and Lead Counsel recognizes the possibility that the jury could be swayed by Defendants' expert(s) and awarded little to no damages.

47.     Even if Lead Plaintiffs prevailed at trial, Defendants might appeal the decision. The appeals process can go on for months or even years, significantly prolonging the Action and jeopardizing any recovery awarded to the class at trial should Defendants be victorious.

48.     Even if Lead Plaintiffs prevail on all of the elements of a securities-fraud claim at trial and secure damages for the class, a significant hurdle would remain: collecting the judgement

from Defendants or their insurers.  Defendants' funds available to satisfy a judgment in this Action would be limited.  Their insurance policies could rapidly deplete, given the limited insurance proceeds available and the certain wasting of those proceeds, as well as the existence of other actions in which Defendants are implicated, such as the Code Rebel Bankruptcy Proceedings and California state court actions, that may be paid from the same, limited insurance proceeds. Defendants could have relatively little assets, if any, available to satisfy a judgment.  Moreover, if this Action is stayed pending the Code Rebel Bankruptcy Proceedings (an issue that would likely be contentious, *see* Dkt. Nos. 35-40, 45), Lead Plaintiffs would be shackled from pursuing their claims, while any available proceeds are rapidly depleted from the Code Rebel Bankruptcy Proceedings.

49.     In contrast to the foregoing, the Settlement represents an immediate and certain benefit for the Settlement Class.  Lead Counsel, having evaluated the substantial risk, time, and expense required to prosecute this Action through trial and appeals, strongly believes that the Settlement is an excellent result for the Settlement Class.

### C.     Settlement Terms

50.     The Settlement provides for a payment of one-million, three-hundred-thousand U.S. dollars ($1,300,000) in cash in exchange for the release of all claims asserted by Lead Plaintiffs against Reid Dabney, Arben Kryeziu n/k/a Arben Kane, David Dwelle, James Canton, and Volodymyr Bykov (collectively, "Settling Defendants") and completely resolves this Action and any claims by the Trustee.  Of the Settlement Amount, one-million U.S. dollars ($1,000,000) will be allocated as gross proceeds to settle any claims against the Settling Defendants in this Action, along with claims brought in the *Healv* and *Torres* Actions.  Of the Settlement amount, the remaining three-hundred-thousand U.S. dollars ($300,000) will be allocated as gross proceeds

to settle any claims against the Settling Defendants that can be brought in connection with Code Rebel Bankruptcy Proceeding.

51.     The gross proposed settlement of $1,000,000 for this Action and the *Healy* and *Torres* Actions represents approximately 16.67% of the aggregate estimated damages, which is based on an analysis performed by Lead Counsel with consultation from the Stanford Consulting Group, Inc. ("Stanford Consulting"), which provides research, analysis, and expert testimony in complex business litigation, particularly securities class actions.  This percentage of recovery is above those in typical securities class action lawsuits.  *See, e.g.,* Cornerstone Research, *Securities Class Action Settlements: 2016 Review and Analysis* at 7-8 (2017) (Ex. 6) (stating that in securities class actions with less than $50 million in estimated damages, the median settlement in 2016 was for 7.3% of the estimated damages, and for all estimated damages levels, the total sample of settlements were for 2.5% of estimated damages).

52.     Defendants have not admitted to any liability or any wrongdoing as part of the Settlement and adamantly maintain that they are not liable to the Settlement Class.

## III.    THE COURT'S PRELIMINARY APPROVAL ORDER AND LEAD PLAINTIFFS' DISSEMINATION OF NOTICE

### A.    Preliminary Approval Order

53.     On June 28, 2017, the Court filed the Preliminary Approval Order (Dkt. No. 71).

54.     In the Preliminary Approval Order, the Court:

    a)    preliminarily approved the Agreement set forth therein, subject to further consideration at the Final Fairness Hearing;

    b)    certified the proposed Settlement Class, and Lead Plaintiffs as class representatives, for the purposes of this Settlement only;

  c)  scheduled a Final Fairness Hearing for December 8, 2017 at 10:00 a.m. to determine whether the proposed Settlement on the terms and conditions provided for in the Agreement is fair, reasonable, and adequate and should be approved; whether a judgment as provided in the Agreement should be entered; whether the proposed Plan of Allocation should be approved; and to determine any amount of fees, expenses, and awards that should be awarded to Lead Counsel and to Lead Plaintiffs;

  d)  appointed Strategic Claims Services ("SCS" or "Claims Administrator") to supervise and administer the notice procedure as well as the processing of claims;

  e)  approved the form and content of the Notice, summary notice, and Proof of Claim and Release Form;

  f)  directed SCS to take all reasonable efforts to cause a copy of the Notice and Proof of Claim and Release Form to be mailed by first-class mail to potential Settlement Class Members;

  g)  directed copies of the Notice and Proof of Claim form to be posted on SCS' website designated for the Action no later than July 19, 2017;

  h)  directed Lead Counsel, through SCS, to cause the summary notice to be posted over *GlobeNewswire* and to be published in *Investor's Business Daily* no later than August 4, 2017;

  i)  directed Lead Counsel to serve on Defendants' counsel and file with the Court proof of such mailing and publication no later than December 1, 2017;

  j)  established procedures and deadlines for Settlement Class Members to object to the Settlement, Plan of Allocation, award of attorneys' fees, reimbursement of expenses, or award to Lead Plaintiffs and to appear at the Final Fairness Hearing; and

  k)  established procedures and deadlines for Settlement Class Members to submit Proofs of Claim or seek exclusion.

**B.**  **Notice**

55.  Pursuant to the Preliminary Approval Order, concurrently with this filing, Lead Counsel served on Defendants' counsel and filed with the Court the Evans Dec., a true and correct copy of which is attached hereto as Ex. 3.  The Evans Dec. sets forth the efforts undertaken by SCS to mail the Notice and Claims Forms to potential Settlement Class Members, to publish the summary Notice, and to establish the website and Internet notice.

56.     As detailed in the Evans Dec., SCS mailed or caused to be mailed a total of 5,207 Notice and Claim Forms through first-class mail to potential Settlement Class Members and 1,472 letters were mailed or emailed to potential nominees.  The summary notice was posted over *GlobeNewswire* and published in *Investor's Business Daily* on July 31, 2017.

57.     Additionally, SCS posted the Notice and Claim Form on SCS' website, www.strategicclaims.net, where it has been available to the public since July 17, 2017.

58.     As required by Federal Rule of Civil Procedure 23, due process, and the PSLRA, the Notice: (a) described the nature of the Action; (b) included the definition of the Settlement Class; (c) set forth the Settlement Class' claims; (d) described the Settlement's terms; (e) disclosed that Lead Counsel intends to seek attorneys' fees up to one-third (33 and 1/3%) of the Settlement Fund, plus reimbursement of expenses up to $30,000, and awards for Lead Plaintiffs up to $2,000 ($1,000 each); (f) advised Settlement Class Members of the right to exclude themselves from the Settlement Class and the binding effect of not doing so; (g) provided the deadline and procedure for opting-out of the Settlement or opposing the Settlement, Plan of Allocation, award of attorneys' fees, reimbursement of expenses, or awards to Lead Plaintiffs; (h) provided the date, time, and place of the Final Fairness Hearing; (i) summarized the reasons why the Settling Parties are proposing the Settlement; and (j) provided the names, telephone numbers, and addresses of Lead Counsel.

59.     The notice procedures set forth above satisfied federal due process because they more than adequately apprised the interested parties of the pendency of the Action and afforded them the opportunity to present their objections.

### C.  Reaction of the Class

60.    To date, no Settlement Class Member has objected to the Settlement, the Plan of Allocation, the attorneys' fees award, the requested reimbursement of expenses, or the awards to Lead Plaintiffs.

### D.  The Plan of Allocation Should be Approved as it is Fair and Reasonable

61.    Pursuant to the Preliminary Approval Order, and as explained in the Notice, all Settlement Class Members who wish to participate in the Settlement must submit a Proof of Claim to SCS no later than September 15, 2017.  All Settlement Class Members who wish to exclude themselves from the Settlement must file a request for exclusion by November 17, 2017.

62.    As set forth in the Notice, all Settlement Class Members who timely file a valid Proof of Claim form entitling him/her to a recovery of $10.00 or more will receive a distribution of the Settlement proceeds, after deduction of attorneys' fees, expenses, notice/administration expenses, Lead Plaintiffs' awards, and taxes incurred on interest income earned by the gross Settlement Fund.  The distribution will be made in accordance with the Plan of Allocation set forth and described in detail in the Notice.

63.    The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Authorized Claimants who suffered economic loss as a result of Defendants' alleged fraud, as opposed to losses caused by market or industry factors unrelated to the alleged fraud.

64.    The Plan of Allocation was formulated by Lead Counsel, in consultation with a well-respected and experienced financial consultant, and was designed to ensure that the distribution of the Settlement Fund was fair and consistent with Lead Plaintiffs' theory of the case, which asserted that there was a decline in the price of Code Rebel securities reflecting disclosure of the truth relating to the alleged misconducts and to ensure that the allocation comported with the federal securities laws, including principles of loss causation and negative causation.

65.     The Plan of Allocation does not compensate losses resulting from "in and out" transactions—losses from sales made prior to revelation of truth.  *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").   The Plan of Allocation requires any gains from Settlement Class Period transactions to be netted with losses from Settlement Class Period transactions, which is rational and reasonable.

66.     Perhaps most importantly, the Plan of Allocation does not discriminate between Settlement Class Members in the same position, as each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund.

67.     Lead Counsel and their financial consultant determined that this was the fairest method of allocation of the Net Settlement Fund.

68.     Plaintiffs retained Stanford Consulting, which provides research, analysis, and expert testimony in complex business litigation, particularly securities class actions, to provide advice on potential damages in the Action.

69.     A plaintiff incurs damages when purchasing a share at a price inflated as a result of false or misleading statements and/or omissions, provided that a later curative disclosure of that fraud causes the stock price to decline.   Price inflation can be created by material misrepresentations and/or omissions on or before the purchase date, which remain uncorrected in whole or in part at that date.   Damages are mitigated if the share is later sold, while the price remains inflated, so that the original purchaser receives at sale an offsetting "bonus" equal to the dollar amount of inflation remaining at the sale date.   Price inflation may be measured from changes in security prices, net of market, industry, and other non-fraud-related effects, when the true condition and prospects of the company are partially or fully disclosed; price inflation present

at the purchase date may be estimated by measuring the portion of the price decline caused by a curative disclosure.

70.    In this Action, the actual loss suffered by a Settlement Class Period purchaser (between May 19, 2015 and May 12, 2017, both dates inclusive) is readily observed as the portion of the Code Rebel-specific price decline—net of market and industry effects—caused by the revelation of fraud.[4]   Specifically, the price inflation present in Code Rebel stock during the Settlement Class Period is estimated based on the Company-specific price decline on the curative-disclosure date.

71.    As demonstrated in the following table, the total Company-specific decline in the price of Code Rebel stock was $2.11, which reflects the amount of money per-share that Plaintiffs lost upon the revelation of fraud:

| Impact Date | Previous Closing Price | Actual Return | Contribution to Price Inflation[5] | Cumulative Price Inflation Prior to Impact Date |
| --- | --- | --- | --- | --- |
| 5/6/16 | $2.16 | -97.77% | $2.11 | $2.11 |

72.    Plaintiffs allege that the misrepresentations and/or omissions began on May 19, 2015, when Code Rebel concluded its offering of the Company's stock.  Accordingly, it is assumed that price inflation associated with the alleged misrepresentations and/or omissions began on May

---

[4] To estimate price inflation during the Settlement Class Period, an event study was conducted for the alleged curative-disclosure date.  The company-specific return on the date was estimated using a regression analysis, which measures the relationship between Code Rebel stock returns and (1) changes in market-wide factors that would be expected to impact all stocks and (2) changes in industry-wide factors.  By measuring how Code Rebel's stock returns moved in relation to an overall market index and an industry index, one can also measure how it responds to company-specific news on a given day.  The company-specific return observed on the alleged curative-disclosure date form the basis of the estimate of price inflation present during the Settlement Class Period.

[5] Contribution to price inflation equals the previous closing price multiplied by the Company-specific return observed on the impact date.

19, 2015, remained constant throughout the Settlement Class Period,[6] and dissipated only when the curative information came to light.

73.     The following table summarizes the evolution of price inflation throughout the Settlement Class Period:

| Summary of Price Inflation in Code Rebel Stock | | |
|---|---|---|
| From | To | Inflation |
| May 19, 2015 | May 5, 2016 | $2.11 |
| May 6, 2016 | May 12, 2017 | $0.00 |

74.     Furthermore, in accordance with the "Limitation on Damages" provisions of the PSLRA (15 U.S.C. §78u-4(e)), damages on a share purchased during the Settlement Class Period and held as of the close of the 90-day period subsequent to the Settlement Class Period (the "90-Day Lookback Period") cannot exceed the difference between the purchase price paid for the stock and the average price of the stock during the 90-Day Lookback Period.  Damages on shares purchased during the Settlement Class Period and sold during the 90-Day Lookback Period cannot exceed the difference between the purchase price paid for the stock and the rolling average price of the stock during the portion of the 90-Day Lookback Period elapsed as of the date of sale.

75.     Additionally, under the U.S. Supreme Court's decision in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005), damages are assessed only for shares purchased during the Settlement Class Period and retained through at least one of the alleged curative disclosures— shares purchased during the Settlement Class Period and sold before the first alleged curative disclosures, as well as shares purchased and sold between two consecutive curative disclosures, do not incur damages.

---

[6] Throughout the Settlement Class Period, the measure of price inflation is limited to the closing price of Code Rebel's stock (this limitation affects the measure of price inflation for days prior to May 6, 2016).

76.     Generally, for shares purchased during the Settlement Class Period, a class member's per-share damages are equal to the lesser of (i) the amount of price inflation in the stock on the date of purchase less the amount of price inflation in the stock on the date of sale, if sold, and (ii) an amount determined by the 90-day lookback provisions.

77.     There have been no objections to the Plan of Allocation (*see* Dec. Ex. 3 (Evans Dec.) at ¶13).  Lead Plaintiffs respectfully submit that it is fair, reasonable, and adequate and should be approved by the Court.

## IV.    LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSMENT OF EXPENSES

### A.    Attorneys' Fees

78.     Lead Counsel have represented the Settlement Class on a wholly contingent basis for more than year, not receiving any payment for their service or the expenses incurred in prosecuting this Action against Defendants and negotiating the Settlement.  Throughout this time, Lead Counsel's dedication to recovering a favorable result for the Settlement Class has been expensive and challenging.

79.     The Notice informed Settlement Class Members that Lead Counsel would apply for attorneys' fees in the amount of one-third (33 and 1/3%) of the Settlement Fund, plus reimbursement of expenses up to $30,000 and awards to Lead Plaintiffs up to $2,000 in total ($1,000 for each).

80.     Lead Counsel requests that the Court award a fee of one-third (33 and 1/3%) of the Settlement Fund, or $333,333.33, plus accrued interest.

81.     As discussed in the Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Lead Plaintiffs filed concurrently herewith, the requested fee is within the range of reasonable fees awarded in

common-fund cases.  In addition, in light of factors, including the excellent result achieved for the Settlement Class, the skill required, the quality of work performed, and the risk of pursuing claims on a contingency basis, a one-third (33 and 1/3%) fee is justified and should be approved.  A study directly addressing attorneys' fees in settlements of a comparable size to the proposed Settlement was in NERA Economic Consulting's *Recent Trends in Securities Class Action Litigation: 2016 Full-Year Review* (2017) ("2016 NERA Report") (Ex. 7).  The 2016 NERA Report concluded that between 1996 and 2011, for securities class-action settlements less than $5,000,000, the median plaintiffs' attorneys' fee award was 33.3% of the settlement, and between 2012 and 2016, the median plaintiffs' attorneys' fee award was 30%.  2016 NERA Report at 39.

82.     As set forth in the time reports in Pomerantz Dec. and Rosen Law Dec., respectively, Pomerantz has committed approximately 141.9 hours to litigating this Action from the initial investigation to its resolution, and Rosen Law has committed approximately 284.93 hours to litigating this Action.  In total, the two firms have devoted approximately  hours to this Action, which includes time spent having done the following, without limitation: moved for lead-plaintiff appointment on behalf of lead plaintiffs William Tran and Adrian Ybarra, which entailed researching securities laws, the alleged fraudulent scheme, and Lead Plaintiffs' damages, amongst other things; conducted an investigation into the alleged fraudulent scheme to plead an initial and amended complaint, which entailed scouring public records, and prepared the initial and amended complaint; prepared, reviewed, and commented upon documents to preserve Lead Plaintiffs and the Settlement Class' rights in connection with Code Rebel Corporation's voluntary petition under Chapter 7 in the Bankruptcy Court; consulted with a damages expert to analyze the amount of damages recoverable from Defendants on behalf of the Settlement Class; participated in several telephonic settlement conferences and correspondence related thereto on Lead Plaintiffs' behalf

with the Settling Defendants and the Chapter 7 Trustee for the Code Rebel Bankruptcy Proceeding; negotiated the contours of agreements with several parties and their counsel; drafted the terms of relevant settlement-related documents, including, without limitation, the Agreement filed in this Action (Docket No. 60), Lead Plaintiffs' Motion for Preliminary Approval of Proposed Settlement, For Approval of the Form and Manner of Notice, and to Schedule a Hearing on Final Approval of the Settlement and on Plaintiffs' Counsel's Application for an Award of Attorneys' Fees and Expenses; and Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and the documents related to the motion.

83.     Lead Counsel's expertise has been vital to obtaining such a favorable result for the Settlement Class.  As set forth in detail in the firm resumes, Pomerantz Dec., Ex. A, Rosen Law Dec., Ex. A, Pomerantz and Rosen Law are nationally-recognized class-action firms with extensive experience litigating and negotiating settlements as lead or co-lead counsel in complex securities class actions.

84.     Based on the hours expended by Pomerantz and Rosen and the current billing rates for the firms' professionals, the total lodestar is $165,094.25.  The lodestar results in a multiplier of 2.02, which is determined by dividing the $333,333.33 requested fee by the firms' $165,094.25 total lodestar.

85.     The time reports list the amount of time spent by each member of the firms involved in the prosecution of this Action.  The firms' time is taken from daily time records regularly prepared and maintained by the firms in the ordinary course of business.  The hours expended in preparing this application for fees and reimbursement of expenses have been excluded from the firms' total time.

86.     The number of hours reasonably and necessarily spent by the Pomerantz on this Action is 141.9.  Pomerantz's hourly billing rates for the professionals working on this Action ranged from $305 to $900.  The total lodestar amount for attorney and professional time, based on the firm's current rates, is $87,147.50.  The hourly rates for attorneys and professional staff at Pomerantz, included in Pomerantz Dec., are the usual and customary rates charged for each individual in non-contingent matters and conform to industry practice.

87.     The number of hours reasonably and necessarily spent by Rosen Law on this Action is approximately 143.03.  Rosen Law's hourly billing rates for professionals working on this Action ranged from $275 to $725.  The total lodestar amount for attorney time, based on the firm's current rates, is $77,946.75.  The hourly rates for attorney and professional time at Rosen Law, included in Rosen Law Dec., are the usual and customary rates charged for each individual in non-contingent matters and conform to industry practice.

88.     The following table provides a summary of the lodestar analysis:

| Firm | Hours | Lodestar |
|------|-------|----------|
| Pomerantz | 141.9 | $87,147.50 |
| Rosen Law | 143.03 | $77,946.75 |
| Totals | 284.93 | $165,094.25 |
| Requested Fee | | $333,333.33 |
| Multiplier | | 2.02 |

89.     As set forth in the Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards to Lead Plaintiffs, a multiplier of 2.02 is within the range of a fair and reasonable award.

### B.     Costs and Expenses

90.     The expenses incurred in the prosecution of this Action are set forth in the accompanying Pomerantz Dec. and Rosen Law Dec.   In total, Lead Counsel has incurred $13,107.67 in expenses.

91.     The Expense Reports list the unreimbursed expenses that Lead Counsel reasonably and necessarily incurred in the prosecution of this Action.

92.     These expenses are reasonable in light of the pace and duration of this Action and were necessarily incurred for its successful resolution.

## V.     AN AWARD TO LEAD PLAINTIFFS IS WARRANTED

93.     The Notice advised Settlement Class Members that Lead Plaintiffs would seek a collective award of no greater than $2,000.

94.     Lead Plaintiffs seek a collective award in the amount $2,000, consisting of $1,000 for Mr. Tran and $1,000 for Mr. Ybarra.   These awards are justified in light of Lead Plaintiffs' efforts and lost time in this Action in connection with researching the facts of the case, reading news about Code Rebel and the broader industry, researching the securities-litigation process and the legal remedies available to investors, reviewing case filings and other key documents initially drafted by Lead Counsel, gathering transaction records, and corresponding with Lead Plaintiffs' Counsel about the case.   Messrs. Tran and Ybarra's efforts are more fully described in Dec. Ex. 4, Declaration of Lead Plaintiff William Tran, and Dec. Ex. 5, Declaration of Lead Plaintiff Adrian Ybarra.

95.     Given the important contributions and the time and effort expended by Lead Plaintiffs, the requested awards are warranted and should be approved.

**VI.    CASES AND OTHER CITED AUTHORITY**

1.      Enclosed as Ex. 6 is a true and correct copy of Cornerstone Research, *Securities Class Action Settlements: 2016 Review and Analysis* (2017).

2.      Enclosed as Ex. 7 is a true and correct copy of NERA Economic Consulting's *Recent Trends in Securities Class Action Litigation: 2016 Full-Year Review* (2017).

3.      Enclosed as Ex. 8 is a true and correct copy of *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015).

4.      Enclosed as Ex. 9 is a true and correct copy of *Booth v. Strategic Realty Trust, Inc.*, No. 13-cv-04921-JST, 2015 U.S. Dist. LEXIS 140723 (N.D. Cal. Oct. 15, 2015).

5.      Enclosed as Ex. 10 is a true and correct copy of *Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11 Civ. 2700 (PKC), Hearing Tr. (S.D.N.Y. Jan. 17, 2014).

6.      Enclosed as Ex. 11 is a true and correct copy of *In re CBD Energy Limited*, 4:15-CV-01668 (GHM), Hearing Tr. (S.D. Tex. July 27, 2017).

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 3, 2017.

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Justin S. Nematzadeh
Joseph A. Hood, II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181

**THE ROSEN LAW FIRM P.A.**

Laurence Rosen
Phillip Kim
Kevin Chan
275 Madison Avenue, 34th floor
New York, New York 10016
Telephone: (212) 686-1060

***Co-Lead Counsel for Lead Plaintiffs and
the Class***

**GOLDBERG LAW PC**
Michael Goldberg
Brian Schall
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067
Tel: (800) 977-7401

***Additional Counsel for Lead Plaintiffs***