USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: APR 1 0 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Robert Springer, et al.,

                Plaintiffs,

–v–

Code Rebel Corporation, et al.,

                Defendants.

16-cv-3492 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

A hearing was held on March 2, 2018, during which time the Court heard Plaintiffs' Motion for Final Approval of the Class Action Settlement and their Application for Award of Attorneys' Fees and Expenses and Incentive Award for Class Representatives. The Court had, on June 28, 2017, entered an Order of Preliminary Approval approving notice to the Class, establishing deadlines for objections, and preliminarily approving the Settlement. Dkt. No. 71. Having considered the written submissions of the parties, having held a final fairness hearing, and having considered the arguments offered at the final fairness hearing, it is hereby ordered that the Class is finally certified and the Settlement is finally approved as follows:

I. **CLASS CERTIFICATION**

The Class is defined as:

> "[A]ll persons, entities, or legal beneficiaries or participants in any entities who purchased or otherwise acquired Code Rebel securities from the date of its initial public stock offering on or about May 19, 2015, to May 12, 2017 (the '<u>Class Period</u>.'). Excluded from the Class are: (a) Such persons or entities who submit valid and timely requests for exclusion from the Class; (b) Settling Defendants, their family members, and their legal representatives, heirs, successors or assigns, and any entity in which any Settling Defendant has or had a controlling interest;" and (c) persons who suffered no compensable losses.

Dkt. No. 60 at 7.

1

For the reasons set forth below, for purposes of this settlement, the Class is certified because it satisfies the requirements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## A. The Settlement Class Meets the Rule 23(a) Criteria

Rule 23(a) imposes four threshold requirements: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"), (2) commonality ("there are questions of law or fact common to the class"), (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"), and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Fed. R. Civ. P. 23(a).

Numerosity is satisfied here. Plaintiffs emphasize that there were 9.679 million Code Rebel stock shares at the end of 2015 and 10.204 million Code Rebel stock shares at the end of 2016. Dkt. No. 73 at 19. Notice was mailed to more than 5,000 potential class members. Dkt. No. 73 at 11; *see Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.").

The commonality and typicality requirements are also met. Commonality demands that the class's claims "depend upon a common contention . . . capable of classwide resolution" such that "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted). "The

2

commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3). The crux of both requirements is to ensure that maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* (alteration in original) (internal citations and quotation marks omitted).

Here, there are several common questions of law or fact, including whether Defendants' statements omitted or misrepresented material facts about Code Rebel, whether Defendants acted with the requisite scienter, and, ultimately, whether Defendants violated federal securities laws. *See* Dkt. No. 73 at 19-20. In addition, Lead Plaintiffs have claims typical of the class—they contend that they acquired Code Rebel shares and suffered damages as a consequence of Code Rebel's misrepresentations or concealment of its financial condition. *See* Dkt. No. 73 at 20.

Finally, Lead Plaintiffs are adequate representatives of the class. The Court appointed William Tran and Adrian Ybarra as Lead Plaintiffs in this action. *See* Dkt. No. 53. Lead Plaintiffs' interests are aligned with the interests of the class, and their claims arose from the same course of events that are the subject of this lawsuit. *See* Dkt. No. 73 at 21. Moreover, the law firms acting as co-Lead Counsel, The Rosen Law Firm, P.A., and Pomerantz LLP, are highly qualified and experienced, as each firm specializes in precisely these types of cases—class action and complex securities litigation. *See* Dkt. No. 53 at 6; Dkt. No. 76 ("Lieberman & Kim Dec.") ¶¶ 3-4; *In re Facebook Inc., IPO Sec. and Derivative Litig.*, 288 F.R.D. 26, 37 (S.D.N.Y. 2012).

## B. The Settlement Class Meets the Relevant Rule 23(b)(3) Criteria

To meet the requirements of Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (internal citation omitted).

Here, the Class's claims all involve the same issue—whether Defendants' omissions and misstatements were misleading and material, caused losses to the settlement class, were relied upon by the class, and were undertaken with scienter. *See* Dkt. No. 73 at 23. Accordingly, the Court concludes that Rule 23(b)(3) was satisfied.

## II. NOTICE WAS APPROPRIATE

As required by the Preliminary Approval Order, the Class was provided with written notice of the terms of the Settlement, the procedures for objecting to the Settlement, and the procedures for opting out of the settlement class. *See* Dkt. No. 71. Strategic Claims Services, a third-party claims administrator, carried out notice in this case. It mailed or emailed 1,472 letters to Nominee Account Holders (banks and brokerage companies) and Institutional Groups (mutual funds, insurance companies, pension funds, and money managers), and it distributed 5,207 notice and claim forms to potential settlement class members or nominees. Dkt. No. 76, Ex. 3 ("Evans Dec.") ¶¶ 5-6. Summary notice was also posted over GlobeNewswire and published in Investor's Business Daily on July 31, 2017. Evans Dec. ¶ 10. In addition, the notice and claim form were available on the website of Strategic Claims Services. Evans Dec. ¶ 7.

## III. SETTLEMENT

A district court's approval of a settlement is contingent on a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This entails a review of both

procedural and substantive fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85-87 (2d Cir. 2001). In conducting this review, the Court is mindful of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Id.* at 117 (quoting 4 Newberg § 11:41, at 87).

### A. Procedural Fairness

With respect to procedural fairness, a proposed settlement is presumed fair, reasonable, and adequate if it culminates from "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (internal quotation marks omitted).

Here, the settlement is entitled to that presumption because it was negotiated at arm's length by counsel experienced in complex securities litigation. Counsel engaged in several settlement discussions and telephone conferences over the course of several months. *See* Lieberman & Kim Dec. ¶¶ 8-9.

### B. Substantive Fairness

In assessing substantive fairness, the Court considers the nine factors detailed by the Second Circuit in *City of Detroit v. Grinnell Corporation*, 495 F.2d 448 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463 (internal citations omitted). "All nine factors need not be satisfied; rather, a court should look at the totality of these factors in light of the particular circumstances." *In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *4 (S.D.N.Y. July 31, 2008) (internal quotation marks omitted).

### 1. The complexity, expense and likely duration of the litigation

This action involves complex issues that would likely spawn much litigation, particularly in light of the still-recent *Halliburton II* decision, which allows defendants to defeat class certification in securities fraud cases if they can show that the misrepresentations at issue did not affect stock price. *See* Dkt. No. 73 at 9-11; *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014). Indeed, there would likely be litigation regarding whether the fraud on the market reliance presumption applies and whether the case involves misrepresentations or omissions. In addition, discovery would be extensive.

Moreover, Code Rebel is currently involved in bankruptcy proceedings, and there would likely be litigation regarding whether the entire action should be stayed pending the bankruptcy proceedings, an issue that has already arisen in this case. *See* Dkt. Nos. 35-40, 45, 53. In addition to the time and expense required to *litigate* the stay issue, a stay—if it were granted—would significantly delay proceedings.

### 2. The reaction of the class to the settlement

"If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart*, 396 F.3d at 118.

Here, notice packages were mailed to 5,207 potential settlement class members. Evans Dec. ¶ 6. As of October 30, 2017, no one had requested to be excluded from the class or objected to the settlement. Evans Dec. ¶¶ 12-13.

### 3. The stage of the proceedings and the amount of discovery completed

While the parties need not have engaged in extensive discovery, *Plummer v. Chem. Bank*, 668 F.2d 654, 660 (2d Cir.1982), a sufficient factual investigation must have been conducted to afford the Court the opportunity to "'intelligently make . . . an appraisal' of the Settlement," *In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 176 (S.D.N.Y. 2000) (quoting *Plummer*, 668 F.2d 654). In addition, "the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [,but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Id.* (alterations in original) (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y.1998)).

The parties have not engaged in formal discovery. *See* Dkt. No. 73 at 12. Nevertheless, before filing the complaint Plaintiffs conducted an investigation into the alleged scheme and researched securities laws, and they hired experts to conduct a damages analysis, predict challenges in establishing loss causation, and determine the maximum potential recovery. *See* Lieberman & Kim Dec. ¶¶ 9-10, 35.

### 4. The risks of establishing liability and damages

In considering these factors, the Court need not adjudicate the disputed issues or decide unsettled questions; rather, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

Plaintiffs would face substantial risks in establishing liability. They would have to prove falsity, materiality, and scienter to a jury. Moreover, as noted above, there are questions regarding whether the case involves misrepresentations or omissions and whether the fraud on the market reliance presumption applies.

Plaintiffs also face risks of establishing damages, and there is a risk that they might recover much less than the value of the settlement. Loss-causation would be difficult to prove at trial. Plaintiffs would need to show that their losses were caused by the Defendants' disclosures, while Defendants would likely argue that the alleged fraud did not cause Plaintiffs' losses. *See* Dkt. No. 73 at 13-14. Moreover, collecting a judgment from Defendants or their insurers would pose further difficulties and uncertainties as Code Rebel has entered bankruptcy proceedings and asserted claims against Defendants in that proceeding. *See* Dkt. No. 73 at 15.

### 5. The risks of maintaining the class action through the trial

Defendants would likely oppose certification of a litigation class.

### 6. The ability of the defendants to withstand a greater judgment

It is not clear that Defendants could withstand a greater judgment in this case.

### 7. The range of reasonableness of the settlement fund in light of the best possible recovery

"The determination whether a settlement is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "[I]n any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion – and the judge will not be reversed if the appellate court concludes that the settlement lies within that range." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

The settlement provides that $1,000,000 will be paid into a settlement fund on behalf of the class. Dkt. No. 60 ¶ 6; Dkt. No. 73 at 15. That amount represents approximately 16.67% of the estimated damages. Dkt. No. 73 at 15. In addition, $300,000 will be allocated to settle any

claims against the Defendants that can be brought in connection with the Code Rebel bankruptcy proceeding. Dkt. No. 60 ¶ 6; *see* Dkt. No. 89.

The settlement fund will be allocated to claimants on a pro rata basis based on the size of their claims—calculated by determining the sum of a claimant's loss amounts, i.e. the difference between the inflation in Code Rebel stock on the purchase date and that on the sale date. Dkt. No. 73 at 16-17.

This is a significant recovery. The Court therefore concludes that these factors weigh in favor of approving the proposed settlement.

\* \* \*

For the forgoing reasons, the Court finds the Settlement to be fair, reasonable and adequate.

## IV. ATTORNEYS' FEES AND EXPENSES

Class Counsel seek an attorneys' fee award of one-third of the $1,000,000 cash settlement, plus accrued interest, expenses of $13,107.67, and compensatory awards to Lead Plaintiffs of $1,000 each. Dkt. No. 75 at 1-4.

It is well-established that in a class action settlement like this one counsel may be entitled to a "reasonable fee." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Class Counsel are also entitled to be reimbursed for litigation costs and expenses. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010). Furthermore, in the Second Circuit, Class Plaintiffs may receive additional payments as "incentive awards." *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

Courts may use either of two methods to determine what constitutes a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 47. "The first is the lodestar, under which the

district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Id.* "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier" based on factors such as the risk of the litigation and the performance of the attorneys. *Id.* Under the second method, referred to as the percentage method, the district court simply sets a percentage of the recovery as a fee. *Id.* In setting the percentage, courts look to the same factors that are used to determine the multiplier for the lodestar. *Id.*

The attorney's fee award is reasonable given the complexity of the case and the risks involved in the litigation. Applying the percentage method, 33.3% is within the range of fee awards typically awarded. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 587-88 (S.D.N.Y. 2008). When the lodestar method applied, the lodestar multiplier is approximately 2.02, which is also within the range of multipliers that have been applied in other cases. *See* Lieberman & Kim Dec. ¶ 84; *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at *9 (S.D.N.Y. Mar. 21, 2013). The requested costs of $13,107.67 are also reasonable.

Finally, in light of the efforts they expended for the benefit of the class, incentive awards of $1,000 each to Tran and Ybarra are appropriate.

## V.  CONCLUSION

For the reasons articulated herein, the Settlement is determined to be fair, reasonable and adequate. Accordingly, Plaintiffs' Motion for Final Approval of the Class Action Settlement is GRANTED; Plaintiffs' Application for Award of Attorneys' Fees and Expenses is GRANTED; and the Class Representatives' Application for Incentive Awards is GRANTED. This resolves

Docket Numbers 72 and 74. The Court will separately enter a final judgment and order of dismissal.

SO ORDERED.

Dated: April 10, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge